APPEAL NO. 12-16451
DISTRICT COURT NO. 3:11-cr-00217-HLA-JRK-1

IN THE
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

RONALD WALKER,
Defendant-Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PRINCIPAL BRIEF OF RONALD WALKER
CRIMINAL CASE

Respectfully submitted,

Judy K. Hunt
Law Office of Judy K. Hunt, P.A.
Florida Bar No. 309842
4905 34th St. S., #142
St. Petersburg, Fl. 33711
727-422-4572
jkhuntlaw@outlook.com

February 11, 2014

U.S. v. Walker, Appeal No. 12-16451

## CERTIFICATE OF INTERESTED PERSONS

## AND CORPORATE DISCLOSURE STATEMENT

The following persons and/or entities* have an interest in the outcome of

this case:

Adams, Henry Lee, Jr., Senior United States District Judge;

Barksdale, Patricia D., United States Magistrate Judge, former appellate counsel;

Barry, Harold, co-defendant;

Bell, Thomas, Esquire, counsel for co-defendant Fernandez;

Bentley, Arthur Lee, III, Acting United States Attorney

Bettman, Gerald, Esquire, counsel for co-defendant Padgett;

Bujno, Eva, co-defendant;

Bullock, Charles, Jr., co-defendant;

Collins, Clyde, Jr., Esquire, counsel for co-defendant Lutz;

Dasher, Lucy, co-defendant;

Dunham, Shirley Wilson, counsel for co-defendant Riggs;

Fernandez, Shaun, co-defendant;

---

*Hunt, Rhodes, and Taylor are added to the Appellant's initial Certificate of Interested Persons and Corporate Disclosure Statement.

i

U.S. v. Walker, Appeal No. 12-16451

Foster, William, co-defendant;

Haine, Ross Scott, II, Esquire, counsel for co-defendant Kirkland;

Hernandez, James A., Esquire, counsel for co-defendant Wilson;

Hunt, Judy K., appellate counsel for Ronald Walker;

Kirkland, Cindy, co-defendant;

Landes, Richard, J., Esquire, counsel for co-defendant Bujno;

Lawrence, Noel, Esquire, counsel for co-defendant Foster;

Lutz, Danielle, co-defendant;

Maxwell, Ronald, Esquire, counsel for co-defendant Bullock;

O'Neill, Robert, former United States Attorney;

Padgett, Anthony, co-defendant;

Rhodes, David P., Assistant United States Attorney, Chief, Appellate

Riggs, Jacklyn, co-defendant;

Rivers, Robert Calvin, Esquire, counsel for co-defendant Dasher;

Rolle, Wade, Esquire, counsel for co-defendant Warner;

Savell, Julie H., Assistant United States Attorney, district court counsel;

Taylor, Michelle Thresher, Assistant United States Attorney, appellate counsel;

Truncale, Charles L., Esquire, district court counsel for Ronald Walker;

U.S. v. Walker, Appeal No. 12-16451

Walker, Ronald, defendant/appellant;

Warner, Thomas, co-defendant; and

Wilson, Jennifer, co-defendant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Ronald Walker requests oral argument on the belief that it will assist this Court.

iii

U.S. v. Walker, Appeal No. 12-16451

## TABLE OF CONTENTS                                    PAGE NO.

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF CITATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

I.    STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    NATURE OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    COURSE OF PROCEEDINGS AND DISPOSITION

            IN THE COURT BELOW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            1.    Statement Regarding Incarceration. . . . . . . . . . . . . . . . 3

            2.    The Indictment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            3.    The Verdict and Sentence. . . . . . . . . . . . . . . . . . . . . . 3

      C.    STATEMENT OF THE FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . 4

            1.    Offense Conduct.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

U.S. v. Walker, Appeal No. 12-16451

2.    The Proposed Walker Plea Agreement, the Proffer, and the Section 851 Notice. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3.    The Government's Theory of Prosecution, Walker's Theory of Defense, Walker's Motion for Judgment of Acquittal, the Jury Instruction on Multiple Conspiracies, and the Motion for New Trial. . . . . . . . . . . . . . . . . . . 10

4.    The Section 851 Enhancement. . . . . . . . . . . . . . . . . . 13

5.    The Sentencing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

6.    The Codefendants' Plea Agreements and Sentencings. 22

D.    STATEMENT OF THE STANDARD OF REVIEW. . . . . . . . . . . 28

III.    SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . 30

IV.    ARGUMENT AND CITATIONS OF AUTHORITY. . . . . . . . . . . . . . . 34

A.    THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING WALKER'S MOTIONS FOR  JUDGMENT OF ACQUITTAL AND A NEW TRIAL WHEN EVIDENCE OF OTHER CONSPIRACIES CONSTITUTED SUCH A VARIANCE FROM THE CHARGE IN THE INDICTMENT THAT WALKER WAS UNFAIRLY SUBJECTED TO HIGHLY PREJUDICIAL

U.S. v. Walker, Appeal No. 12-16451

SPILLOVER, PARTICULARLY AS TO THE JURY'S

DETERMINATION OF DRUG QUANTITY.. . . . . . . . . . . . . . . . 34

B.    THE GOVERNMENT FAILED TO PROVE BEYOND A

REASONABLE DOUBT THAT WALKER HAD BEEN

CONVICTED OF THE PRIOR OFFENSE IDENTIFIED IN THE 21

U.S.C. § 851 INFORMATION.. . . . . . . . . . . . . . . . . . . . . . . . . . . 45

C.    THE GOVERNMENT VIOLATED WALKER'S RIGHT TO DUE

PROCESS BY TAKING UNJUSTIFIABLY INCONSISTENT

POSITIONS AS TO THE QUANTITY OF DRUGS FOR WHICH

MEMBERS OF THE CONSPIRACY SHOULD BE HELD

ACCOUNTABLE AND AS TO WHAT CONDUCT SUPPORTED A

ROLE ADJUSTMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

D.    THE DISTRICT COURT IMPOSED A PROCEDURALLY AND

SUBSTANTIVELY UNREASONABLE SENTENCE.. . . . . . . . . . 59

1.    The Drug Quantity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

2.    Adjustment for use of violence. . . . . . . . . . . . . . . . . . . . . . 60

3.    Adjustment for Endangering a Minor. . . . . . . . . . . . . . . . . 62

4.    Adjustments for Role in the Offense and Witness

vi

U.S. v. Walker, Appeal No. 12-16451

        Intimidation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

    5.     Substantive Reasonableness. . . . . . . . . . . . . . . . . . . . . . . . . 66

V.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

CERTIFICATE OF SERVICE

U.S. v. Walker, Appeal No. 12-16451

## TABLE OF CITATIONS

### CASES CITED                                                   PAGE NO.

*Alleyne v. United States*, 133 S. Ct. 2151 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Almendarez–Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219 (1998). . . . 51

*Bradshaw v. Stumpf*, 545 U.S. 175, 125 S. Ct. 2398 (2005).. . . . . . . . . . . . . . 57, 58

*Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 113 S. Ct. 2786 (1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 47

*Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329 (11th Cir. 2003). . . . . . . . . 47

*Kotteakos v. United States*, 328 U.S. 750, 66 S. Ct. 1239 (1946). . . . . . . . .  38, 39

*Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . 52

*Theus v. United States*, 611 F. 3d 441 (8th Cir. 2010). . . . . . . . . . . . . . . . . . . . . 44

*United States v. Agis–Meza*, 99 F.3d 1052 (11th Cir. 1996) . . . . . . . . . . . . . 53, 55

*United States v. Alred*, 144 F.3d 1405 (11th Cir. 1998) . . . . . . . . . . . . . . . . . 39, 40

*United States v. Bane*, 720 F.3d 818 (11th Cir. 2013). . . . . . . . . . . . . . . . . . . . . 29

*United States v. Calderon*, 127 F.3d 1314 (11th Cir. 1997) . . . . . . . . . . . . . 35, 40

*United States v. Castro*, 89 F.3d 1443 (11th Cir.1996). . . . . . . . . . . . . . . . . . . . . 35

*United States v. Chandler,* 376 F.3d 1303 (11th Cir. 2004).. . . . . . . . . . . . . . . . . 37

*United States v. Chavez*, 584 F.3d 1354 (11th Cir. 2009). . . . . . . . . . . . . . . . . . . 29

*United States v. Crisp*, 324 F.3d 261 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . 47

viii

U.S. v. Walker, Appeal No. 12-16451

*United States v. Dellosantos*, 649 F.3d 109 (1st Cir. 2011). . . . . . . . . . . . 41, 42, 44

*United States v. Docampo*, 573 F.3d 1091 (11th Cir. 2009) . . . . . . . . . . . . . . . . 67

*United States v. Dorman*, 488 F.3d 936 (11th Cir.2007) . . . . . . . . . . . . . . . . . . 67

*United States v. Durham*, 470 F.3d 727 (8th Cir 2006) . . . . . . . . . . . . . . . . . . . 64

*United States v. Evans*, 478 F.3d 1332 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . 56

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004). . . . . . . . . . . . . . . . . 46

*United States v. Florence*, 333 F.3d 1290 (11th Cir. 2003) . . . . . . . . . . . . . . . . 64

*United States v. Fulks*, 683 F.3d 512 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . . . 52

*United States v. George*, 363 F.3d 666 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . 47

*United States v. Glinton*, 154 F.3d 1245 (11th Cir. 1998). . . . . . . . . . . . . . . 37, 38

*United States v. Green*, 175 F.3d 822 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . 46

*United States. v. Harris*, No. 12–14482, 2014 WL 292381

(11th Cir. January 28, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010). . . . . . . . . . . . . . . . . . . . 66

*United States v. Kellam*, 568 F.3d 125 (4th Cir. 2009).. . . . . . . . . . . . . . . . . . . 45

*United States v. Lampton*, 158 F.3d 251 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . 46

*United States v. Lockett*, 391 F. App'x 837 (11th Cir. 2010) . . . . . . . . . . . . . . . 29

*United States v. MacKay*, 715 F.3d 807 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . 49

ix

U.S. v. Walker, Appeal No. 12-16451

*United States v. Manrique*, 959 F.2d 1155 (1st Cir. 1992) . . . . . . . . . . . . . . . . . 61

*United States v. Martinez*, 584 F.3d 1022, 1026–27 (11th Cir. 2009). . . . . . . 55, 65

*United States v. Mazarky*, 499 F.3d 1246 (11th Cir. 2007). . . . . . . . . . . . . . . . 29

*United States v. McGarity*, 669 F.3d 1218 (11th Cir. 2012). . . . . . . . . . . . . . . 29

*United States v. McQueen*, 727 F. 3d 1144 (11th Cir. 2013). . . . . . . . . . . . . . . 30

*United States v. Miller*, 734 F.3d 530 (6th Cir. 2013). . . . . . . . . . . . . . . . . . . . 28

*United States v. Mubayyid*, 658 F.3d 35, 54 (1st Cir. 2011). . . . . . . . . . . . . . . . 29

*United States v. Otero*, 868 F.2d 1412, 1415 (5th Cir. 1989).. . . . . . . . . . . . . . . 61

*United States v. Patterson*, 481 F.3d 1029, 1034 n.3 (8th Cir. 2007). . . . . . . 63, 64

*United States v. Richardson*, 532 F.3d 1279, 1298 n.2 (11th Cir. 2008). . . . . . . . 41

*United States v. Robertson*, 493 F.3d 1322 (11th Cir. 2007). . . . . . . . . . . . . . . . 29

*United States v. Rodriguez*, 140 F. App'x 45 (11th Cir. 2005) . . . . . . . . . . . . . . 64

*United States v. Sanchez-Garcia*, 461 F.3d 939 (8th Cir. 2006) . . . . . . . . . . . . . 46

*United States v. Scott*, 403 F. App'x 392 (11th Cir. 2010) . . . . . . . . . . . . . . . . . 47

*United States v. Sells*, 477 F.3d 1226 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . 41

*United States v. Stanley*, 739 F.3d 633 (11th Cir. 2014). . . . . . . . . . . . . . . . . . . 28

*United States v. Suarez*, 313 F.3d 1287, 1289 (11th Cir. 2002). . . . . . . . . . . . . . 35

*United States v. Swafford*, 512 F.3d 833 (6th Cir. 2008). . . . . . . . . . . . . . . . . 42, 43

U.S. v. Walker, Appeal No. 12-16451

*United States v. Torres*, 81 F. 3d 900, 904 (9th Cir. 1996). . . . . . . . . . . . . . . . . 52

*United States v. Villarreal*, 707 F.3d 942, 962 (8th Cir. 2013). . . . . . . . . . . . . . 28

*United States v. Warren*, 772 F.2d 827 (11th Cir. 1985). . . . . . . . . . . . . . . . . . 41

*United States v. Whited*, 473 F.3d 296, 299 (6th Cir. 2007) . . . . . . . . . . . . . . . 64

*United States v. Williams*, 199 F. App'x 828, 830 (11th Cir. 2006) . . . . . . . . . . 64

*United States v. Zapata*, 139 F.3d 1355 (11th Cir.1998). . . . . . . . . . . . . . . . . . 53

*United States v. Zuniga-Arteaga*, 681 F.3d 1220, 1222–23 (11th Cir. 2012). . . . 28

## STATUTES CITED

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

18 U.S.C. § 3553(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

18 U.S.C. § 3742(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

21 U.S.C. § 846. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

21 U.S.C. § 851 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 31, 45

21 U.S.C. § 851(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

21 U.S.C. 851(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

21 U.S.C. § 851(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

xi

U.S. v. Walker, Appeal No. 12-16451

## RULES CITED

Fed. R. App. P. 4(b)(1)(A)(i).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xiii

Fed. R. Crim. P. 32(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

## OTHER AUTHORITIES CITED

USSG §2D1.1, comment. (n.20) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

USSG §2D1.1(a)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 53

USSG §2D1.1(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21, 60

USSG §2D1.1(b)(12). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

USSG §2D1.1(b)(13)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 62

USSG §2D1.1(b)(14)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65, 66

USSG §2D1.1(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

USSG §2D1.1(c)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 57

USSG §3B1.1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55, 66

USSG §6A1.3(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

U.S. v. Walker, Appeal No. 12-16451

## STATEMENT OF JURISDICTION

This is an appeal by Ronald Walker from a final judgment of the United States District Court for the Middle District of Florida in a criminal case challenging his conviction and the sentence imposed in the judgment. The district court entered judgment against Walker on December 5, 2012. D561.[2] The district court had jurisdiction to enter the judgment pursuant to 18 U.S.C. § 3231. Walker filed his timely notice of appeal on December 14, 2012. D564; see Fed. R. App. P. 4(b)(1)(A)(i). This Court has jurisdiction over this appeal pursuant to 18 U.S.C. § 3742(b).

---

[2]We reference entries on the docket sheet as "D" followed by the docket number.

U.S. v. Walker, Appeal No. 12-16451

# I.                STATEMENT OF THE ISSUES

A.      Whether the district court abused its discretion in denying Walker's motions for judgment of acquittal and a new trial when evidence of other conspiracies constituted such a variance from the charge in the indictment that Walker was unfairly subjected to highly prejudicial spillover, particularly as to the jury's determination of drug quantity.

B.      Whether the government failed to prove beyond a reasonable doubt that Walker had been convicted of the prior offense identified in the 21 U.S.C. § 851 information.

C.      Whether the government violated Walker's right to due process by taking unjustifiably inconsistent positions as to the quantity of drugs for which members of the conspiracy should be held accountable and as to what conduct supported a role adjustment.

D.      Whether the district court imposed a procedurally and substantively unreasonable sentence.

1

U.S. v. Walker, Appeal No. 12-16451

## II.                STATEMENT OF THE CASE

### A.    NATURE OF THE CASE

This case involves how a large group of methamphetamine addicts got their drugs.  Many members of the group, including Walker, learned how to manufacture methamphetamine and shared drugs that they manufactured with individuals who supplied the required pseudoephedrine.

Walker's trial and sentencing were fundamentally unfair because the government singled Walker out, and took the position that he, and he alone, had been part of all manufacturing operations, whereas those many separate manufacturing operations had been conducted by competitors who did not share their products with Walker.  The government prejudiced Walker by proving multiple conspiracies at trial, violated his right to due process by taking factually inconsistent positions in Walker's case—particularly as to drug quantity—than it took in the cases of the all other members of the group of addicts, persuaded the court to enhance Walker's sentence under 21 U.S.C. § 851 based upon unreliable evidence, and led the district court to impose an unfairly disparate and severe sentence in his case.  As a result, this Court should vacate Walker's conviction and sentence.

2

U.S. v. Walker, Appeal No. 12-16451

## B.    COURSE OF PROCEEDINGS AND DISPOSITION IN THE COURT BELOW

### 1.    Statement Regarding Incarceration

Walker is incarcerated, serving a 300-month sentence of imprisonment imposed in this case.

### 2.    The Indictment

In October 2011, in a superseding indictment, a federal grand jury charged Walker and twelve others, Shaun Fernandez, Eva Bujno (a/k/a "Rosebud," Doc. 571 at 3), Anthony Padgett, Jennifer Wilson, Danielle Lutz, Jacklyn Riggs, William Foster (a/k/a "Cornbread," D573 at 109), Thomas Warner, Cindy Kirkland, Charles Bullock, Jr., Harold Barry (a/k/a "Doc," D572 at 182), and Lucy Dasher, with one count of conspiracy to manufacture 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846.  D210.

### 3.    The Verdict and Sentence

Only Walker proceeded to trial; in June 2012, the jury found Walker guilty and found that the conspiracy had involved methamphetamine in an amount in excess of 50 grams.  D421.

In November 2012, the district court sentenced Walker to 300 months'

3

imprisonment, followed by 120 months' supervised release.  D561.  This appeal

followed.  D564.

### C.    STATEMENT OF FACTS

#### 1.    Offense Conduct[3]

Walker, Fernandez, Bujno, Padgett, Wilson, Foster, Warner, Riggs, and

Dasher (and also Brandon Goodman, Michael Culp, and Adam Plum, who were

unindicted coconspirators), manufactured methamphetamine separately many

times, and, on occasion, two or more of them manufactured methamphetamine

together.  D338 at 20;  D349 at 20; D354 at 21; D365 at 18–19; D366 at 21; D380

at 20–21; D381 at 17; D571 at 14–18, 36–43, 55–60; D572 at 31–38, 61–68,

82–90, 109–118, 123, 132–34, 150–55, 182–85, 198, 208–15, 226–30; D573 at

13–27, 31–45, 74–76, 113–18, 129, 140–41.  As a matter of course, the

manufacturers shared methamphetamine that they manufactured with individuals

who provided them with pseudoephedrine and other needed supplies.  D571 at

15–18, 35–42, 55; D572 at 20–21, 31–32, 64–67, 83–87, 108–12, 121–23,

150–52; D573 at 13–22, 28–29, 52, 74–76, 83–86, 98–99, 113–14, 129, 133–34,

---

[3]The evidence of Walker's participation in the charged conspiracy consisted almost exclusively of the testimony of coconspirators who had entered into plea agreements that obligated the United States to consider recognizing substantial assistance.  *See* Docs. 571–73.

140–41, 150, 225–26.  The demand for manufacturers to make methamphetamine

for suppliers was overwhelming.  D571 at 42.

Plum taught Walker how to manufacture methamphetamine.  D571 at

14–15, 46–47; D572 at 89–90, 163–69.  Walker taught Bujno and Wilson how to

manufacture methamphetamine.  D571 at 15, 25, 35, 61; D572 at 69, 72–73.

Walker, Wilson, and Plum taught Fernandez how to manufacture

methamphetamine.  D571 at 59; D572 at 81–82, 163–69, 214.  Fernandez, Walker,

and Plum taught Brandon Goodman how to manufacture methamphetamine.  D572

at 83, 150, 160, 163–65, 173–79, 187.  Fernandez taught Warner and Goodman

how to manufacture methamphetamine.  D572 at 83–84, 150, 225–26.  Wilson

taught Padgett how to manufacture methamphetamine, and Padgett also learned

from a recipe he got from Bobbie Sanders.  D572 at 82–83; D573 at 31–32.

Wilson taught Foster how to manufacture methamphetamine.  D572 at 82–83.

Warner taught Dasher how to manufacture methamphetamine.  D573 at 25–29

Dasher, using a recipe she obtained from Bobbie Sanders, taught Culp how to

manufacture methamphetamine, who also learned by watching Fernandez, Walker,

and Bobbie Sanders.  D573 at 28–29, 86, 98–99.

Walker shared methamphetamine that he manufactured with Bujno, Wilson,

Fernandez, Foster, Warner, and Dasher.  D571 at 15–18, 36, 55, 58–59; D572 at

13–17, 64–67, 215–217; D573 at 13–20, 113.  Fernandez shared

methamphetamine that he manufactured with Goodman, Foster, Wilson, Kirkland,

Riggs, and Warner.  D572 at 155, 175–77, 183–84, 213–14; D573 at 119.  Bujno

shared methamphetamine that she manufactured with Wilson, Christine Collins,

Riggs, and Ashley Murphy.  D571 at 42; D572 at 86–87.  Padgett shared

methamphetamine that he manufactured with Wilson, Dasher, Boyer Perry,

Tabatha Perry, "Joe," and "Johnny."  D573 at 37–39.  Wilson shared

methamphetamine that she manufactured with Foster, Fernandez, and Stephen

McMichael.  D572 at 83, 87.  Warner shared methamphetamine that he

manufactured with Dasher.  D573 at 47, 50.  Goodman shared methamphetamine

that he manufactured with Foster.  D573 at 114.  Riggs had her own customer

base.  D572 at 184–85.

After Walker taught Bujno to manufacture methamphetamine, he asked her

not to cook for Dasher, who was a particularly good supplier.  D571 at 56.  Bujno

and Wilson worried about angering Walker by providing supplies to persons other

than Walker.  D572 at 124.  After Fernandez taught Goodman to manufacture

methamphetamine, Goodman no longer dealt with Walker, which upset Walker.

6

D572 at 160–62.  Walker got upset when Dasher supplied other cookers, but, "[n]onetheless Dasher also provided pseudoephedrine pills to Anthony Padgett, Jennifer Wilson, Thomas Warner, and Michael Culp to use to manufacture methamphetamine."  Presentence Investigation Report ("PSR") ¶ 47; D366 at 21. Dasher obtained methamphetamine from Walker for a few months, but, after she learned to manufacture her own methamphetamine, she no longer supplied Walker or obtained methamphetamine from him, which upset Walker.  D573 at 30–32, 40–51.  Walker also was upset when Culp began to manufacture his own methamphetamine.  D573 at 87–88.

Walker, Bujno, and Wilson all manufactured methamphetamine in campers and a shed on Walker's business and residential properties.  D571 at 28–32, 38–39, 47; D572 at 13–16, 69–74, 77–78, 113-14; D573 at 83–84.  Bujno manufactured methamphetamine—apart from Walker—in her garage for many years and cut off contact with Walker in early 2010.  D571 at 41–43; D572 at 8, 21–22, 26, 33, 50; D572 at 21–22.  Fernandez, Walker, and Wilson manufactured methamphetamine in Fernandez's house.  D572 at 152–54, 185–86, 211–13, 221–22; D573 at 83–84, 103, 119, 142–43.

Walker and Bujno jointly manufactured methamphetamine for their own

7

U.S. v. Walker, Appeal No. 12-16451

use.  D572 at 116.  Walker and Wilson jointly manufactured methamphetamine for their own use.  D572 at 116, 125.  Walker and Fernandez jointly manufactured methamphetamine for their own use.  D572 at 154–55.  Wilson and Bujno jointly manufactured methamphetamine for their own use.  D572 at 114–15.  Wilson and Fernandez jointly manufactured methamphetamine for their own use.  D572 at 116.  Wilson and Padgett jointly manufactured methamphetamine for their own use.  D572 at 117.  Goodman, Fernandez, and Plum jointly manufactured methamphetamine for their own use.  D572 at 163–74.  Warner and Goodman jointly manufactured methamphetamine for their own use.  D572 at 226–27.  Culp manufactured methamphetamine for his own use.  D573 at 87.

Goodman admitted that Walker's, Fernandez's, Wilson's  and his manufacturing operations had nothing to do with each other.  D572 at 196–97. Dasher admitted that her and Culp's manufacturing operation, that her and Padgett's manufacturing operation, that Padgett's and Wilson's manufacturing operations, and that her obtaining methamphetamine from Warner had nothing to do with Walker.  D573 at 35– 38, 45–46, 50–51, 61, 65.

 Records established the amounts of pseudoephedrine that Walker, Lutz, Bujno, Riggs, Wilson, Goodman, Dasher, Culp, and Foster had purchased during

8

the time of the alleged conspiracy, and an agent summarized those purchases.  D

573 at 183–215; Gov't Exs. 11A–11J.  A chemist testified that realistically an

individual could only extract methamphetamine in an amount of 40–50 percent of

the total amount of pseudoephedrine used.  Doc 573 at 258–62.

    In closing argument, the government urged the jury to take into account all

methamphetamine that every manufacturer had created to decide that the

conspiracy involved 50 grams or more of methamphetamine.  D574 at 48–51.

## 2.    The Proposed Walker Plea Agreement, the Proffer, and the Section 851 Notice.

    The prosecutor orally offered Walker a plea agreement that included the

promise to file a motion for downward departure recognizing substantial

assistance if Walker provided a complete and truthful proffer that led to the

prosecution of others.  D575 at 47–50, 54–55.  Walker accepted the offer and told

Fernandez of his decision to cooperate, which resulted in Fernandez's pleading

guilty.  D576 at 74.

    After Walker provided a proffer—on his understanding that he had an

agreement with the government—the government withdrew its offer, D575 at

47–50; D576 at 76, and instead offered a written plea agreement that did not

9

include the promise to consider filing a motion recognizing Walker's substantial assistance from him persuading Fernandez to plead guilty, D576 at 75. The government then advised Walker that unless he pled guilty by a fixed date it would file a notice pursuant to 18 U.S.C. § 851, increasing the statutory minimum and maximum penalties. D576 at 75. Walker decided to accept the offer but could not reach his attorney in the allotted time to advise him of the decision. D576 at 75.

Six days before Walker's trial commenced, the government filed the section 851 information, increasing Walker's statutory minimum and maximum penalties to 20 years' to life imprisonment based upon an alleged prior conviction: "On or about February 19, 1988, in the 23rd Circuit, Circuit Court of Jefferson County, Missouri, Case Number CR-187-120-FX-J1, the defendant, RONALD WALKER, was convicted of possession of a controlled substance, a felony." D399; D576 at 75. Walker filed a written response denying that he was the person who had been convicted of this crime. D504.

**3.    The Government's Theory of Prosecution, Walker's Theory of Defense, Walker's Motion for Judgment of Acquittal, the Jury Instruction on Multiple Conspiracies, and the Motion for New Trial.**

Early in the trial, the prosecutor explained the government's theory as

10

follows:

> [Jennifer Wilson], like Miss Bujno, who had done the exact same thing, initially learned how to cook methamphetamine from Mr. Walker, continuing the conspiracy with the other co-conspirator pill purchasers that had to—it had to be determined who they could give the pills to, which cook, to manufacture methamphetamine, which was determined by Mr. Walker and what he would allow.  So it's clearly a statement in furtherance of a conspiracy.

D571 at 63.  However, at trial the government offered no evidence that supported its proffer that Walker had controlled others' manufacturing operations or that he had dictated to whom suppliers could bring pseudoephedrine; to the contrary, it proved that others having separate methamphetamine operations upset Walker. D366 at 21; D572 at 160–62; D573 at 30–32, 40–51, 87–88.

Walker moved for judgment of acquittal on the ground that the government had proved many separate conspiracies and not the single conspiracy described in the indictment, and that this had resulted in a fatal variance.  D574 at 3–5.

In response, the prosecutor argued:

> The object of the conspiracy is to manufacture methamphetamine, and I think it is clear that the testimony that was presented shows each and every one of the individuals that testified joined in that conspiracy with Mr. Walker, obviously at different times, for different periods of time, all with the same object, same plan, which was to manufacture methamphetamine.

11

U.S. v. Walker, Appeal No. 12-16451

Individuals were doing that at the same time with him and some at other times, some longer than others; but the instructions say and the conspiracy instructions say a person only has to join in one time to be a member of the conspiracy; does not need to know the other members of the conspiracy or their roles within it.

D574 at 5–6.  The district court denied the motion.  Doc. 574 at 7–8.

Walker sought a jury instruction based on the theory of defense that the government had proved multiple conspiracies.  D574 at 9–17.  The government objected, but the district court granted Walker's request, D574 at 9–17, 28.  The court instructed the jury:

Proof of several separate conspiracies isn't proof of the single, overall conspiracy charged in the indictment unless one of the several conspiracies proved is the single overall conspiracy.

You must decide whether the single overall conspiracy charged existed between two or more conspirators.  If not, then you find the defendant not guilty of that charge.

But if you decide that a single overall conspiracy did exist, then you must decide who the conspirators were.  And if you decide that a particular Defendant was a member of some other conspiracy—not the one charged—then you must find that Defendant not guilty.

So to find a Defendant guilty, you must all agree that the Defendant was a member of the conspiracy charged—not a member of some other separate conspiracy.

D420 at 14.

12

U.S. v. Walker, Appeal No. 12-16451

After the jury convicted him, Walker filed a motion for a new trial alleging in part that the evidence had varied from the charge in the indictment to the extent that Walker likely had been prejudiced. D428 at 3. The district court denied the motion with no explanation. D435.

### 4.    The Section 851 Enhancement

Prior to sentencing, the probation office noted that the government had filed an information pursuant to 21 U.S.C. 851(b) seeking an enhanced penalty based upon Walker's prior conviction for possession of a controlled substance. PSR ¶¶ 165–66. Based on the section 851 notice, the probation office recommended that the district court set Walker's sentencing range at life imprisonment. PSR ¶¶ 166–67.

At the evidentiary hearing on the proposed section 851 enhancement, the government submitted only testimony by a fingerprint expert, who claimed to have compared fingerprints attached to the Missouri conviction with Walker's fingerprints and claimed to have previously concluded that the two sets of prints he had examined belonged to the same person. D575 at 29–33. On cross-examination and recross-examination, however, the expert could not provide the basis for his opinion, explaining that he had not brought to court either his

13

U.S. v. Walker, Appeal No. 12-16451

plottings of the finger characteristics or his case notes identifying the fingerprint

characteristics he had relied on to form his opinion.  D575 at 34–35, 39–42.  On

redirect examination, the expert referred to a report that recited his opinion as to

each finger, but the report again spoke in generalities and did not identify any

specific characteristics.  D575 at 37–39.   The expert conceded that he could not

testify to the identifying characteristics "without the aid of a magnifying glass or

the use of an enlargement tool on the IAFIS system at the FBI in my office."

D575 at 40.  The expert could not even recall what or how many identifying

characteristics he allegedly had seen when he conducted his examination.  D575 at

41.

Walker protested that he had been denied the ability to effectively cross-

examine the expert as to the basis for his out-of-court conclusions, that the

witness's inability to identify the bases for his opinions rendered that opinion

unreliable, and that the government had failed to meet the beyond-a-reasonable-

doubt burden:

> I wanted to cross-examine him as to the basis for an
> out-of-court conclusion that he drew.  And I don't doubt that he had a
> conclusion sometime prior to coming in here today; but, your Honor,
> by coming in here today unequipped to answer questions to provide a
> basis for his report today that they are from the same, what it is, it's
> unreliable and it's effectively denying any kind of adequate

14

U.S. v. Walker, Appeal No. 12-16451

cross-examination.

The Court, as a fact-finder, has to rely on in-court testimony concerning a matter as significant as this, which, I mean, this—the net effect of his testimony would raise my client's minimum mandatory sentence from 10 years to perhaps to 20 years.

Your Honor, in all my years of practice I've never seen a fact-finding analysis beyond a reasonable doubt standard where a person just comes in and says, [t]rust me. I know I had a reason before I came in here today for concluding this. I can't tell you today what were the bases of my conclusion. Therefore, you can't really cross-examine me because all I can tell you is that at sometime in the past, out of court, there was no opportunity to cross-examine me. Trust me that I made a conclusion out of court.

I would say, your Honor, that his mere adoption of an out-of-court action is not sufficient. The bottom line is he could not tell your Honor one point other than for one—I think he mentioned one characteristic on one finger that he may have been able to see. No other. No other fingers. No other fingerprints. No other basis.

I would submit, your Honor, that it doesn't meet the standard of proof beyond a reasonable doubt.

D575 at 44–45. The government offered no other evidence and did not seek a

postponement to correct defects in the expert testimony. D575 at 45. At the

beginning of Walker's sentencing proceeding, the district court announced that it

had found "that the evidence was sufficient beyond a reasonable doubt of the

convictions and that the defendant is the person who was so convicted." D576 at

5.

15

U.S. v. Walker, Appeal No. 12-16451

## 5.    The Sentencing

The United States Probation Office recommended that the district court establish Walker's total offense level at 54, his criminal history score at 12, and his criminal history category at V.  PSR ¶¶ 99–101.  The district court did not state on the record what it decided as to Walker's offense level, criminal history category, or sentencing range.  Walker's attorney stated his belief that, based upon the court's rulings on his objections, his total offense level would be 54 and the criminal history would be V, but the court did not adopt, disagree, or agree with the remark.  D576 at 69.

In mitigation, Walker argued that the applicable offense level exaggerated his culpability, which was that of a methamphetamine addict who manufactured that drug to share with suppliers who brought him pseudoephedrine.  D576 at 71–72.  Walker stressed that he did not sell methamphetamine and that everyone involved "did the exact same thing."  D576 at 71–73.

The district court sentenced Walker to 300 months' imprisonment, followed by 10 years' supervised release, but it did not explain its reasoning.  D576 at 78–79.  Walker objected that his sentence was substantively unreasonable.  D576 at 80.

16

U.S. v. Walker, Appeal No. 12-16451

### a.    Determination of drug quantity

The probation office set Walker's base offense level at level 36, pursuant to USSG §2D1.1(a)(5) and (c)(4), based upon an alleged amount of methamphetamine of more than 500 grams. PSR ¶ 69. The probation office noted that a chemist had opined that "every gram of pseudoephedrine purchased can produce a one-half gram of methamphetamine." PSR ¶ 58. It calculated the drug quantity by totaling all pseudoephedrine purchased by the 12 coconspirators named in the indictment and also by Andy Gleason, Goodman, Culp, and Tammy-Jo Lacey, who had been charged and convicted in separate cases. PSR pp.4–5 (describing "Related Cases); PSR ¶ 58. The probation office concluded that, based on these logs and ratio, "the members of the conspiracy" had produced approximately 1.5 kilograms of methamphetamine. PSR ¶ 59.

Walker objected, arguing that the government could not readily prove that the quantity exceeded 500 grams and that, therefore, the jury finding of more than 50 grams controlled. D575 at 16; D575 at 7–9. Walker argued that he could not be held accountable for all of the pseudoephedrine identified in the pharmacy logs because the evidence at trial established that others had used much of the pseudoephedrine identified therein to manufacture methamphetamine separate and

17

apart from his manufacturing activities.  D576 at 12–13.  Walker further objected to the accuracy of factual statements in the PSR that attributed all individuals' conduct to him.  D576 at 13–14.

The government conceded that the quantity of methamphetamine that would have been manufactured from just Walker's purchases of pseudoephedrine was only 129.72 grams.  D576 at 14–15.  The government contended, however, that Walker should be held accountable for the quantities of methamphetamine that would have been manufactured using at least Lutz's, Dasher's, Wilson's, Warner's, and Culp's pseudoephedrine purchases.  D576 at 14–19.  The district court agreed, overruled Walker's objection, and held Walker accountable for more than 500 grams of methamphetamine.  D576 at 19.

### b.    Adjustment for alleged abuse

The probation office recommended that the district court adjust Walker's offense level upward by 2 levels pursuant to USSG §2D1.1(b)(2) based upon Lutz's, Dasher's, and Rigg's claims that Walker had physically abused them.  PSR ¶¶ 45, 47, 48, 71. Walker objected to the factual allegations and to the 2-level adjustment to his offense level based on these allegations.  D575 at 10–11; D576 at 35.

18

U.S. v. Walker, Appeal No. 12-16451

The government offered the testimony of Drug Enforcement Administration Special Agent Stephen Johns, who testified that Lutz had reported that Walker had physically abused her, but who stated that he "tried to steer clear of that because it had nothing to do with our investigation[.]" D576 at 27.  Agent Johns testified that Dasher had advised that Walker had threatened her with physical violence. D576 at 28.  Agent Johns could not recall Riggs' claiming abuse or threats of abuse.  D576 at 28.  On cross-examination, Agent Johns conceded that the neither Lutz,  Dasher, nor Riggs had testified that the alleged abuse was related to the conspiracy.  D576 at 29–30.

Noting that the PSR had not included any allegations of abuse or threats directed toward Tammy Jo Lacey, the prosecutor nonetheless asked Agent Johns concerning Lacey's statements on that topic, and he responded by stating that Lacey had claimed that Walker had "punched her in the neck … something to do with the methamphetamine production" and had threatened her and her daughter "because he thought that Lacey had spoken about his drug business with a third party."  D576 at 28–29.

The district court revealed that, in other proceedings it had "heard from all of these women … and every one of them presented the position that's in the

19

U.S. v. Walker, Appeal No. 12-16451

Presentence Report about Mr. Walker." D576 at 41. Walker's attorney responded

that he had no knowledge of what had transpired, protested that "there is nothing

in the record about that," and argued that the government would have to meet its

burden by evidence in Walker's case, not in another case. D576 at 41–42.

Although the court initially stated its agreement with Walker's position, it

ultimately overruled his objection without explanation. D576 at 41–44.

### c.    Adjustment for maintaining drug premises

The probation office recommended that the district court adjust Walker's

offense level upward by 2 levels pursuant to USSG §2D1.1(b)(12), based on

Walker's allegedly maintaining premises for manufacturing a controlled

substance. PSR ¶ 72.

Walker objected to the adjustment, arguing that the premises had not been

maintained mainly for the purpose of manufacturing. D576 at 44–45, 50. The

government countered that Walker occasionally had manufactured drugs in the

house and also had used a trailer, camper, and a shed on the property. The district

court overruled Walker's objection to the adjustment. D576 at 51.

### d.    Adjustment for endangering a minor

The probation office recommended that the district court adjust Walker's

20

offense level upward by 6 levels pursuant to USSG §2D1.1(b)(13)(D), based on

Walker's allegedly exposing his daughter to hazards while manufacturing

methamphetamine.  PSR ¶ 73.

Walker objected to the adjustment, arguing that no one had manufactured

methamphetamine in the house where his daughter resided, that the limited use of

his house for storage was not of a nature to endanger the child, and that the use of

the separate trailer also did not endanger the child.  D576 at 52–53.  The

government countered that Walker had dried and bagged methamphetamine in the

house and that methamphetamine oil, pills, and batteries had been found in the

house.  D576 at 55–56.  The government also contended that the adjustment

applied because the camper and a shed used to manufacture methamphetamine had

been located on the same property as the house.  D576 at 55.   The district court

overruled Walker's objection to the adjustment.  D576 at 59.

### e.    Adjustment for role in the offense

The probation office recommended that the district court adjust Walker's

offense level upward by 4 levels pursuant to USSG §2D1.1(b)(2) for Walker's

allegedly being an organizer or leader of criminal activity involving five or more

participants.  PSR ¶ 76.

21

Walker objected to the adjustment for role-in-the-offense, arguing that the group of addicts, some of whom manufactured, some of whom supplied, and all of whom shared drugs, had acted with no identifiable leaders, organization, or structure. D576 at 59–60. The government argued that Walker's teaching others how to manufacture methamphetamine, allowing others to use his camper, having others assist in manufacturing, and recruiting suppliers made him a leader. D576 at 61–63. The district court overruled Walker's objection to the adjustment. D576 at 64.

### 6.    The Codefendants' Plea Agreements and Sentencings

The sentencing proceedings as to each of Walker's codefendants were set for after Walker's trial, Docs. 356–61; Docs. 369–71; Docs. 392–93; D401, Docs. 628–30, which made it impossible for Walker to show the jury that the government had held each of his codefendants accountable only for the amount of methamphetamine that would have been manufactured using the pseudoephedrine that they personally had purchased.

Fernandez pled guilty without a written plea agreement. Docs. 384, 387, 401. Although Fernandez had manufactured methamphetamine with and without the assistance of codefendants, at times using pseudoephedrine provided by others,

U.S. v. Walker, Appeal No. 12-16451

D386 at 6, the government held Fernandez accountable only for the amount of pseudoephedrine that Fernandez personally had purchased, which at 50% yielded approximately 189.38 grams of methamphetamine, D386 at 6, and the court held Fernandez accountable only for more than 150 and less than 500 grams of methamphetamine, D514 at 4, 32. Fernandez objected to a two-level enhancement to his sentencing guidelines range based on USSG § 2D1.1—due to his allegedly maintaining a drug house—on the ground that the ordinary and customary use of his house was for lawful purpose, as his domicile. D514 at 6–7. The district court found that the government had submitted insufficient evidence that Fernandez had maintained his residence for the purpose of manufacturing methamphetamine and sustained Fernandez's objection to that enhancement. D514 at 31–32. The court varied downward to sentence Fernandez to the statutory minimum sentence of 120 months' imprisonment. D514 at 45, 47.

In Bujno's plea agreement, the government stated that, although she had manufactured methamphetamine using pseudoephedrine supplied by others, "it is impossible to determine the total amount of pseudoephedrine supplied . . . by others," and it set the quantity of drugs for which she should be held accountable as only 7.92 grams, 50% of the amount of pseudoephedrine Bujno personally had

23

U.S. v. Walker, Appeal No. 12-16451

purchased.  D337 at 21.  The probation office, however, attributed to Bujno 40.32

grams of methamphetamine, based on records showing that Bujno had purchased

more pseudoephedrine than the quantity described in the plea agreement.  D647 at

5–10.  Bujno argued that the court should find that the 7.92 grams set forth in the

plea agreement controlled.  D647 at 7–9.  The district court agreed to hold Bujno

accountable only for the amount set forth in her plea agreement.  D647 at 11.  The

district court sustained Bujno's objection to a six-level enhancement for

endangering her daughter, D647 at 24, who was sixteen at the time of the

sentencing in 2012, D647 at 12–13, which meant the daughter had been 11 to 15

years old during the time of Bujno's offense, D337.  Bujno had manufactured

methamphetamine at her home both in a detached garage and inside the house.

D647 at 12–16.  The government proffered that Bujno had manufactured

methamphetamine both in the residence and in a shed over an extended period of

time, that many items used in the manufacturing process had been found in the

shed, and that the air quality at the residence had been compromised.  D647 at

16–24.  The district court found that the government failed to show a substantial

risk of harm to the minor.  D647 at 24.  The government asked the court to impose

a sentence of no less than 36 months' imprisonment, but the court sentenced Bujno

24

U.S. v. Walker, Appeal No. 12-16451

to only 24 months' imprisonment.  D647 at 25–26, 38–41.

In Padgett's plea agreement, the government stated that "the readily provable" amount of methamphetamine was 61.67 grams, calculated at 50% of the amount of pseudoephedrine that he personally had purchased.  D380 at 21.  The probation office attributed 147.4 grams of methamphetamine to Padgett.  D446 at 2.  Padgett objected to being held accountable to any amount over the 61.67 grams described in his plea agreement, emphasizing that the government had agreed that this was the "readily provable" amount.  D446 at 2.  After the prosecutor agreed that 61.67 was the "readily provable" quantity, the district court held Padgett accountable for only the 61.67 grams of methamphetamine.  D661 at 52–53.  The district court sentenced Padgett to 41 months' imprisonment.  D661 at 81.

The factual statements submitted as to each conspirator, including the manufacturers, focused primarily on Walker's conduct rather than each defendant's particular conduct.  Docs. 337–39, 348, 349, 354, 365–66, 380–81, 628.  In its factual submissions as to coconspirators Foster, Riggs, and Dasher the government did not mention their having manufactured methamphetamine.  D339 at 19–21; D338 at 19–21; D366 at 19–21.  In the plea agreements, as to the

25

U.S. v. Walker, Appeal No. 12-16451

quantities of methamphetamine involved in the defendants' offenses, the

government and the defendants agreed as follows:

| Defendant | Quantity | Explanation | Citation |
|---|---|---|---|
| Bujno | 7.92 grams | 50% of Bujno's purchases of pseudoephedrine | D337 at 19 |
| Riggs | 67.67 grams | 50% of Riggs's purchases of pseudoephedrine | D338 at 21 |
| Foster | "at least 50 grams" | 50% of Foster's  purchases of pseudoephedrine | D339 at 21 |
| Lutz | 109.24 grams | 50% of Lutz's purchases of pseudoephedrine | D348 at 21 |
| Bullock | 17.04 grams | 50% of Bullock's purchases of pseudoephedrine | D349 at 21 |
| Wilson | 143.3 grams | 50% of Wilson's purchases of pseudoephedrine | D354 at 21 |
| Kirkland | 10.8 grams | 50% of Kirkland's personal purchases of pseudoephedrine | D365 at 19 |
| Dasher | 75.84 grams | 50% of Dasher's purchases of pseudoephedrine | D366 at 21 |
| Padgett | 61.67 grams | 50% of Padgett's purchases of pseudoephedrine | D380 at 21 |
| Warner | 29.53 grams | 50% of Warner's purchases of pseudoephedrine | D381 at 18 |
| Barry | between 150 and 500 grams | 50% of Barry's purchases of pseudoephedrine (163.36 grams) | D628 at 19 |

U.S. v. Walker, Appeal No. 12-16451

At sentencing, Foster's attorney argued that he should be treated more leniently than the manufacturers.  D653 at 10–11.  The prosecutor tried to explain the discrepancy between the calculation of Walker's and all other defendant's drug quantities; the discussion showed that the district court was confused by the inconsistent positions:

> THE COURT:      Wait, wait. It's my recollection that in all of the cases where there was a cook, their quantity was calculated on the basis of the pills that were brought to them, not by one, but by everybody.
>
> Is that accurate?  Or that everybody that the government knew of.
>
> MS. SAVELL:      That we could, your Honor.
>
> For Mr. Walker's situation that was the case because we had no [sic] people brought pills to him.  But it's difficult to quantify those numbers because there were people cooking and giving their pills to multiple cooks.
>
> So individuals that ended up pleading guilty were to—those that pled guilty were to their particular pill purchases.
>
> But in this particular case, like I said, Mr. Foster had—the evidence was that he had other people buying pills for him, so he gets the benefit of not being held accountable for all those because I don't know who those people are to be able to get their pill records.

D653 at 11.

27

U.S. v. Walker, Appeal No. 12-16451

The district court sentenced the manufacturers as follows:

| Defendant | Sentence | Citation |
|-----------|----------|----------|
| Walker | 300 months' imprisonment | D561 |
| Fernandez | 120 months' imprisonment | D474 |
| Bujno | 36 months' imprisonment | D481 |
| Padgett | 41 months' imprisonment | D482 |
| Wilson | "time served" (downward variance) | D523 |
| Foster | 12 months' and 1 day's imprisonment | D525 |
| Warner | 36 months' imprisonment | D483 |
| Riggs | 10 months' imprisonment | D581 |
| Dasher | 24 months' imprisonment | D485 |

## D.    STATEMENT OF THE STANDARD OF REVIEW

A.    As to Issue I.A, this Court reviews *de novo* the denial of motions for judgment of acquittal and for a new trial. *United States v. Zuniga-Arteaga*, 681 F.3d 1220, 1222–23 (11th Cir. 2012); *United States v. Stanley*, 739 F.3d 633, 651 (11th Cir. 2014). Because Walker raised the issue of prejudice from proof of multiple conspiracies, D428 at 3; D574 at 3–5, this Court should also review *de novo* whether the jury's exposure to extensive proof of separate conspiracies affected Walker's substantial rights. *See United States v. Miller*, 734 F.3d 530, 536 (6th Cir. 2013); *United States v. Villarreal*, 707 F.3d 942, 962 (8th Cir. 2013);

28

*United States v. Mubayyid*, 658 F.3d 35, 54 (1st Cir. 2011).

B.    As to Issue I.B, this Court reviews the legality of a sentence *de novo*, *United States v. Mazarky*, 499 F.3d 1246, 1248 (11th Cir. 2007), and reviews factual findings related to sentencing enhancements for clear error, *United States v. Robertson*, 493 F.3d 1322, 1329–30 (11th Cir. 2007). *See United States v. Lockett*, 391 F. App'x 837, 838 (11th Cir. 2010) (applying these standards of reviews in examining sufficiency of proof of identity under 21 U.S.C. § 851).

C.    As to Issue I.C., this Court reviews due process challenges first raised on appeal for plain error. *United States v. McGarity*, 669 F.3d 1218, 1257 n.59 (11th Cir. 2012) (*cert. denied, McGarity v. United States*, 133 S. Ct. 378 (2012)).

D.    As to Issue I.D, this Court reviews de novo a district court's interpretation and application of the sentencing guidelines, and reviews its factual findings, including the determination of drug quantity, for clear error. *United States v. Bane*, 720 F.3d 818, 824 (11th Cir. 2013) (*cert. denied, Bane v. United States*, 134 S. Ct. 835 (2013)); *United States v. Chavez*, 584 F.3d 1354, 1367 (11th Cir. 2009). This Court reviews the substantive reasonableness of the sentence for abuse of discretion, but, in order to determine whether the sentencing court imposed an unreasonable sentence, it examines whether the court based its

29

sentence on improper factors. *United States v. McQueen*, 727 F. 3d 1144, 1156–57 (11th Cir. 2013).

## III.    SUMMARY OF THE ARGUMENT

A.    Walker sought a judgment of acquittal and a new trial based upon the government's proving multiple conspiracies instead of the single overarching conspiracy described in the indictment.  The district court abused its discretion in denying these motions because Walker's trial was infected with voluminous evidence of drug manufacturing that did not involve Walker.  Proof that Walker had known that other addicts in his circle manufactured methamphetamine for their personal use—and for the use of their suppliers—does not show the common goal that conspiracy law requires.  A conspiratorial agreement is one in which the members engage in a single enterprise that provides a mutual benefit, not one in which members compete with one another, as happened in this case.

The multiple-conspiracy jury instruction did not properly submit to the jury the issue of whether the government had improperly proved multiple conspiracies instead of the single overarching conspiracy charged in the indictment.  The district court did not instruct the jury that it must acquit Walker if the government had proved multiple conspiracies.  To the contrary, the court instructed the jury

U.S. v. Walker, Appeal No. 12-16451

that it should find Walker guilty if "one of the several conspiracies proved is the single overall conspiracy."  Because Walker did manufacture and share methamphetamine with others, this instruction required the jury to convict Walker no matter how many conspiracies the evidence had proved.

And, the voluminous evidence of Walker's acquaintances' separate manufacturing conspiracies necessarily had a substantial prejudicial affect.  This evidence improperly suggested that Walker was far more culpable than he was, by making it appear that all of the various manufacturing operations were part of a single conspiratorial agreement.  Indeed, the district court instructed the jury to consider all of the evidence when it determined the quantity of drugs involved in the so-called single conspiracy.

B.    The government must prove beyond a reasonable doubt all factual assertions in a 21 U.S.C. § 851 information that a defendant challenges.  Walker denied that he was the person convicted of the offense described in the section 851 information.  To prove identity, the government submitted testimony by a fingerprint expert.  That witness could not, however, explain the basis for his opinion.  Accordingly, the evidence was unreliable and did not prove beyond a reasonable doubt that Walker had been convicted of the identified offense.

31

U.S. v. Walker, Appeal No. 12-16451

C.     The government violated Walker's right to due process by taking contradictory positions on the quantity of drugs and by taking contradictory positions as to what conduct made a member of the conspiracy a leader.  Drug quantity and role-in-the-offense are factual issues, and facts do not change simply because a defendant chooses to plead guilty as opposed to exercise his right to trial by jury.  In sentencing the other manufacturers of methamphetamine, the district court determined that each should be held accountable only for the amount of methamphetamine derived from their personal purchases of pseudoephedrine. Walker's due process rights were violated when the court calculated drug quantity in his case using a different method that vastly increased Walker's offense level. Similarly, the district court applied a role-in-the offense adjustment only in Walker's case, when the facts allegedly justifying that adjustment were present in the cases of at least four other defendants who also manufactured methamphetamine.  As a result of these due process violations, Walker was sentenced to a substantially more severe sentence than others who had engaged in identical conduct.

D.     The district court imposed a procedurally unreasonable sentence by (1) holding Walker accountable for drugs that were not part of his manufacturing

32

U.S. v. Walker, Appeal No. 12-16451

operation; (2)  without notice, applying an adjustment for use of violence based on allegations outside of the PSR; (3) applying an adjustment for endangering a minor in the absence of proof that Walker's methamphetamine-manufacturing operation had posed a substantial risk of harm; (4) applying a role-in-the-offense adjustment in the absence of evidence that Walker had been a leader or organizer.

The district court also imposed a substantively unreasonable sentence. Despite that Walker's conduct was indistinguishable from that of the other manufacturers, the court imposed a hugely disparate sentence in Walker's case. Although coconspirators who pled guilty were in different positions from Walker, who went to trial, much of the differences in the guidelines calculations were due to the government's urging the court to make inconsistent rulings on identical facts.

U.S. v. Walker, Appeal No. 12-16451

IV.        ARGUMENT AND CITATIONS OF AUTHORITY

A.        THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING WALKER'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND A NEW TRIAL WHEN EVIDENCE OF OTHER CONSPIRACIES CONSTITUTED SUCH A VARIANCE FROM THE CHARGE IN THE INDICTMENT THAT WALKER WAS UNFAIRLY SUBJECTED TO HIGHLY PREJUDICIAL SPILLOVER, PARTICULARLY AS TO THE JURY'S DETERMINATION OF DRUG QUANTITY.

Walker sought a judgment of acquittal and a new trial based upon the government's presenting evidence of numerous conspiratorial agreements that were entirely separate from Walker's manufacturing operation.  D428 at 3; D574 at 3–5.  Because Walker suffered substantial prejudice from proof at trial of these numerous separate conspiracies, the district court abused its discretion in denying Walker's motions.

"A material variance between an indictment and the government's proof at

34

trial occurs if the government proves multiple conspiracies under an indictment alleging only a single conspiracy." *United States v. Castro*, 89 F.3d 1443, 1450 (11th Cir.1996).  For a jury to conclude that a single conspiracy existed, the government must prove that a common goal existed. *United States v. Suarez*, 313 F.3d 1287, 1289 (11th Cir. 2002).  "The key is to determine whether the different sub-groups are acting in furtherance of one overarching plan." *United States v. Calderon*, 127 F.3d 1314, 1329 (11th Cir. 1997) (internal quotation marks omitted).

In this case, the trial evidence established that many individuals became acquainted based upon their common addiction to methamphetamine. Manufacturers shared with suppliers methamphetamine that they manufactured from provided supplies. *See* Statement of Facts at 4–9.  This large group of addicts never agreed to pool supplies or methamphetamine as a whole, and never agreed to act jointly to obtain supplies or methamphetamine for the entire group of addicts. *See* Statement of Facts at 4–9.   To the contrary, the manufacturers and suppliers consumed the output themselves, giving no thought or consideration to the other addicts within their circle of friends and acquaintances. *See* Statement of Facts at 4–9.

35

Concededly, the government proved that Walker had agreed to manufacture methamphetamine and to share the product with others who provided him needed supplies.  *See* Statement of Facts at 4–9.  However, it also proved that, separate and apart from Walker:  (1) Fernandez agreed to manufacture methamphetamine and to share product with Goodman, Foster, Wilson, Kirkland, Riggs, Warner, and Plum, D386 at 6; D572 at 155, 163–77, 183–84; 213–14; (2) Bujno agreed to manufacture methamphetamine and to share product with Wilson, Christine Collins, Riggs, and Ashely Murphy, D571 at 42; D572 at 86–87, 114–15; (3) Padgett agreed to manufacture methamphetamine and to share product with Wilson, Dasher, Boyer Perry,  Tabatha Perry, "Joe," and "Johnny," D573 at 37–39; (4) Wilson agreed to manufacture methamphetamine and to share product with Foster, Fernandez, Padgett, and Stephen McMichael, D572 at 83, 87, 116–17; (5) Warner agreed to manufacture methamphetamine and to share product with Dasher,  D573 at 47, 50; (6) Dasher agreed to manufacture methamphetamine and to share product with Padgett and "friends," D573 at 33–34; (7) Goodman agreed to manufacture methamphetamine and to share product with Foster and Warner; D573 at 114, 226–27; and (8) Riggs agreed to manufacture methamphetamine and to share product with Goodman and also had her own customer base for whom she

36

manufactured methamphetamine, D572 at 184–85.

New manufacturers who coopted suppliers angered those manufacturers who were replaced, including Walker.  D571 at 56, D572 at 124, 160–62; D573 at 78–88.  No agreement existed between the separate manufacturing operations; conspiratorial agreements were limited to those who shared a particular manufacturer's product at a particular time.  *See* Statement of Facts at 4–9.  Thus, the evidence proved at least ten separate methamphetamine-manufacturing conspiracies—Walker's, Fernandez's, Bujno's, Padgett's, Wilson's, Foster's, Warner's, Dasher's, Goodman's, and Riggs's.  *See* Statement of Facts at 4–9.

Assuming that Walker was a "hub" in a wheel conspiracy, and that his suppliers were "spokes," that conspiracy simply did not include other manufacturers.  For other manufacturers to have been part of Walker's conspiracy, they would have had to agreed to share their product, kickback some of their product, or offer some benefit to Walker.  *See e.g. United States v. Chandler,* 376 F.3d 1303, 1317 (11th Cir. 2004)*; United States v. Glinton*, 154 F.3d 1245, 1251 (11th Cir. 1998).  Instead, when some of Walker's "spokes" (suppliers) became "hubs" (manufacturers), Walker was excluded from sharing or benefitting from the new operations.  *See* Statement of Facts at 4–9.  That this large group of addicts

37

knew one another, and that suppliers from time to time used multiple or different

manufacturers, does not convert all of the manufacturing operations into a single

broad conspiracy.  The government did not even try to separate evidence of those

transactions in which Walker was involved—or even knew about—from those in

which he was not involved.  *See* Statement of Facts at 4–9.

It is improper to "confuse[] the common purpose of a single enterprise with

the several, though similar purposes of numerous separate adventures of like

character."  *Kotteakos v. United States*, 328 U.S. 750, 769, 66 S. Ct. 1239, 1250

(1946).  As this Court stated in *Glinton*, 154 F.3d at 1251:

> It is clearly not sufficient simply to say that the
> defendants each shared a common goal, to-wit: profit
> from the sale of cocaine.  In order to constitute a single
> conspiracy there must be a single enterprise which sets
> up a common goal connecting each defendant.  *See, e.g.,*
> *Coy*, 19 F.3d at 633–34 (distinct distribution schemes
> and absence of overlapping participants indicates two
> separate conspiracies); *Castro*, 829 F.2d at 1045
> ("similar illegal objective" not enough to support single
> conspiracy).

Similarly, the Supreme Court outlined the harm from proof of multiple

conspiracies when a single conspiracy is charged:

> [T]he burden of defense to a defendant, connected with
> one or a few of so many distinct transactions, is vastly
> different not only in preparation for trial, but also in

38

> looking out for and securing safe-guard against evidence
> affecting other defendants, to prevent its transference as
> 'harmless error' or by psychological effect, in spite of
> instructions for keeping separate transactions separate.

*Kotteakos*, 328 U.S. at 766–67, 66 S. Ct. at 1249.  This burden was uniquely

overwhelming in Walker's case because he was the *only* defendant on trial.  Thus,

it does not matter whether or not the evidence was sufficient to prove that Walker

had conspired to manufacture methamphetamine, because his trial was

fundamentally unfair.  It was impossible for the jury to isolate evidence of

Walker's sharing the methamphetamine that he had manufactured, from the

evidence of many others sharing methamphetamine that they had manufactured in

transactions that had nothing to do with Walker.

The multiple-conspiracy jury instruction that the district court delivered

only solidified the likelihood of prejudice.  Analyzing the prejudicial effects of

proof of multiple conspiracies, this Court concluded that "the arguable existence

of multiple conspiracies does not constitute a material variance from the

indictment if, viewing the evidence in the light most favorable to the government,

***a reasonable trier of fact could have found that a single conspiracy existed***

***beyond a reasonable doubt***."  *United States v. Alred*, 144 F.3d 1405, 1414 (11th

Cir. 1998) (emphasis added).  Yet, the district court instructed the jury that proof

U.S. v. Walker, Appeal No. 12-16451

of multiple conspiracies "isn't proof of the single, overall conspiracy charged in the indictment **unless one of the several conspiracies proved is the single overall conspiracy**." D420 at 14 (emphasis added). This Court never has authorized the government to prove multiple conspiracies just so long as, somewhere along the way, it also proved the single conspiracy described in the indictment. To the contrary, this Court will overturn a jury determination that a single conspiracy existed if it is not supported by substantial evidence. *Alred*, 144 F.3d at 1414; *United States v. Calderon*, 127 F.3d 1314, 1327 (11th Cir.1997). The multiple-conspiracy instruction that the court gave did not require the jury to consider whether the evidence proved only one or multiple conspiracies; instead it ordered the jury to convict Walker just so long it found—somewhere within the rubble of all of the conspiracies that the government actually proved—sufficient evidence of the conspiracy described in the indictment. Moreover, the district court instructed the jury to consider *all* of the evidence, D420 at 5, which included the evidence of all of the other conspiracies that did not involve Walker. Under these instructions, the jury had no choice but to convict Walker of conspiring with those suppliers with whom he shared methamphetamine, regardless of how many methamphetamine-manufacturing conspiracies the government proved at his trial.

40

U.S. v. Walker, Appeal No. 12-16451

Evidence of the other conspiracies quite obviously had a prejudicial spillover affect.  The jury necessarily—as it was instructed, D420 at 5—considered evidence of others' manufacturing activity in considering Walker's guilt.  "A defendant's 'substantial rights' may be affected where there are so many defendants and evidence of so many separate conspiracies that there is a substantial chance that jurors would transfer evidence of one conspiracy to an unrelated defendant."  *United States v. Warren*, 772 F.2d 827, 835 n.12 (11th Cir. 1985); *see also United States v. Sells*, 477 F.3d 1226, 1238 (10th Cir. 2007) ( "[a] variance may affect the substantial rights of the accused, however, if it is more likely than not that the jury imputed the evidence to the defendant in determining guilt").  When there is "prejudicial impact or spillover" from evidence of other conspiracies, the appropriate remedy is a new trial.  *United States v. Richardson*, 532 F.3d 1279, 1298 n.2 (11th Cir. 2008).

And, a jury necessarily is influenced by a plethora of evidence implicating codefendants in separate conspiracies.  In *United States v. Dellosantos*, 649 F.3d 109, 125 (1st Cir. 2011), the court concluded that serious harm resulted from the jury's exposure to this type of evidence:

> Thus, under the guise of its single conspiracy theory, the
> government subjected the Defendants to voluminous

41

> testimony relating to the other sixteen indicted
> individuals.  This situation created a pervasive risk of
> 'evidentiary spillover,' where the jury might have
> unfairly transferred to the Defendants the guilt relating to
> the other sixteen indicted individuals.

The court found that it did not matter that the evidence had been sufficient to

convict the defendant of one conspiracy, because the "variance between the

conspiracy specified in the indictment and the [other] conspiracy unfairly

prejudiced the Defendants." *Id*. at 125–26.  In *United States v. Swafford*, 512 F.3d

833, 841 (6th Cir. 2008), the defendant was charged with conspiring to aid and

abet the manufacture of methamphetamine and with conspiring to distribute iodine

for use in producing methamphetamine.  At trial, numerous government witnesses

testified that they were methamphetamine manufacturers who had bought iodine

from Swafford.  *Id*. at 838.  The court "agree[d] with the defendant that his

conviction on the two conspiracy counts suffers from an impermissible variance

because in each charge there were multiple conspiracies with different

participants," and the court concluded that "therefore the conspiracy convictions

must be overturned." *Id*.  The court noted that "each alleged member [of a

conspiracy must] agree[] to participate in what he knew to be a collective venture

directed toward a common goal" and that the "government failed to prove that the

U.S. v. Walker, Appeal No. 12-16451

methamphetamine cooks were acting in furtherance of a common goal or that there

was any significant interdependence among them." *Id*. at 841–42 (internal

quotation marks omitted). The Sixth Circuit also explained the prejudice that

arises from this type of variance:

> Where there is no connection between users of the same
> product but the factfinder mistakenly believes there is a
> union of interest and criminal intent and an agreement to
> coordinate activity, the harm to the public will appear to
> be greater and the participants more culpable. Here, the
> appearance of coordinated criminal activity appears more
> culpable than individual sales, implicating the Supreme
> Court's long-standing admonition that "charges of
> conspiracy are not to be made out by piling inference
> upon inference, thus fashioning ... a dragnet to draw in
> all substantive crimes.

*Id*. at 843 (quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 711, 63 S. Ct.

1265 (1943)).

Furthermore, due to the admission of evidence of others' separate

manufacturing activities, Walker unquestionably was prejudiced as to the jury's

ability to properly evaluate drug quantity. The indictment alleged that Walker had

conspired to manufacture 50 grams of methamphetamine or more, D210, and the

court instructed the jury to decide on the amount of drugs involved, D420 at 12.

The government urged the jury to take into account all methamphetamine that

43

U.S. v. Walker, Appeal No. 12-16451

every manufacturer had created to decide that the conspiracy involved 50 grams or more of methamphetamine.  D574 at 48–51.

In *Theus v. United States*, 611 F. 3d 441, 448 (8th Cir. 2010), although the court concluded that a variance in proof did not prejudice the defendant as to his conviction, it determined that spillover evidence from a different conspiracy did result in the defendant's being convicted of a conspiracy involving five kilograms of cocaine despite that the evidence did not support that drug quantity.  It is impossible to know whether Walker's jury accepted the records of pseudoephedrine purchases, or whether, instead, it relied on impermissible coconspirator testimony that described amounts of methamphetamine that they had manufactured in transactions unrelated to Walker.  As in *Dellosantos*, 649 F.3d at 125, in Walker's case the government proceeded under the guise of a single conspiracy theory and subjected Walker to voluminous testimony relating to crimes in which he took no part, *see* Statement of Facts at 4–9, thereby creating a pervasive risk of evidentiary spillover.

Accordingly, this Court should vacate Walker's conviction.

44

U.S. v. Walker, Appeal No. 12-16451

**B.**    **THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT WALKER HAD BEEN CONVICTED OF THE PRIOR OFFENSE IDENTIFIED IN THE 21 U.S.C. § 851 INFORMATION.**

The government filed an information pursuant to 21 U.S.C. § 851, alleging that Walker had been convicted of a prior felony offense. D399. Walker denied that he was the person convicted of that offense. D504. Because the government failed to prove beyond a reasonable doubt that Walker had been convicted of that offense, this Court should vacate Walker's sentence and remand this case for resentencing without the section 851 enhancement.

21 U.S.C. § 851 establishes the procedure to increase a statutory penalty due to a prior conviction. It requires the government to file an information identifying the prior convictions it relies on. 21 U.S.C. § 851(a). 21 U.S.C. § 851(c)(1) provides that when, as in this case, a defendant denies any allegation in the section 851 information, the district court must conduct a hearing in which the government "shall have the burden of proof beyond a reasonable doubt on any issue of fact."

In *United States v. Kellam*, 568 F.3d 125, 145 (4th Cir. 2009), the court

45

explained that, despite that evidence may show that it is possible, or probable, or even likely that the defendant is the same person who was previously convicted, "the prosecution's burden of proof is more than possibly, probably, or likely—it is beyond a reasonable doubt." Thus, when a defendant challenges a section 851 information on the ground of identity, courts generally require physical evidence such as photographs or fingerprints. *See e.g.*, *United States v. Sanchez-Garcia*, 461 F.3d 939, 947–48 (8th Cir. 2006) (evidence included fingerprint analysis, photograph, and evidence connecting defendant to alias); *United States v. Green*, 175 F.3d 822, 835 (10th Cir. 1999) (proof that the name of the defendant previously convicted was one of defendant's aliases, that both defendants had the same birthday, and that both had nearly identical addresses was insufficient; government should have offered physical evidence such as photographs or fingerprints); *United States v. Lampton*, 158 F.3d 251, 260 (5th Cir. 1998) (prosecution satisfied burden in part by fingerprint expert testimony).

An expert is qualified to render an opinion only when "the methodology by which the expert reaches his conclusions is sufficiently reliable." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Indeed, a judge must ensure "that an expert's testimony [ ] rests on a reliable foundation." *Daubert v. Merrell Dow*

46

U.S. v. Walker, Appeal No. 12-16451

*Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993).  When an

expert "fails to identify the specific facts upon which his opinion was based" or

"fail[s] to explain the basis for an important inference," his opinion should not be

taken into account.  *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344

(11th Cir. 2003).

Many courts, including this Court, have considered whether expert

fingerprint evidence is admissible under *Daubert*.  *See United States v. Scott*, 403

F. App'x 392, 397 (11th Cir. 2010) (collecting cases).  However, a defendant's

having the opportunity to challenge through cross-examination the methods used

and the conclusions reached is an essential part of why courts deem this type of

evidence reliable.  *See Scott*, 403 F. App'x at 398 (when defendant was "able to

cross-examine the government expert … concerning the possible flaws in her

methodology" expert fingerprint evidence was admissible); *United States v.*

*George*, 363 F.3d 666, 673 (7th Cir. 2004) ("the issue as to whether particular

prints can be connected to a particular defendant goes to the weight and credibility

of the evidence" and, whether prints are misattributed is informed by thorough

cross-examination); *United States v. Crisp*, 324 F.3d 261, 269–70 (4th Cir. 2003)

(citing *Daubert*, 509 U.S. at 596, 113 S. Ct. 2786, for proposition that reliability of

47

fingerprint identification can be challenged by vigorous cross-examination).

In Walker's case, the government relied on testimony of a fingerprint expert, but his testimony was neither expert nor reliable.  The analyst testified that sometime in the past he had compared the fingerprints of the individual convicted of the offense described in the government's section 851 notice with Walker's fingerprints, and that at that time he had concluded that the fingerprints were those of the same person.  D575 at 32–34, 41–42.  The expert tried to justify his opinion by explaining that, back when he had examined the fingerprints, he had observed that the two sets of fingerprints had similar whirl shapes and ridge characteristics.  D575 at 37–38.  He could not, however, explain which whirls or ridges supported his opinion.  D575 at 34–35, 41–42.  Indeed, he could  identify only one similar characteristic.  D575 at 34–35, 41–42.  And, he could not even state how many identical characteristics he had relied upon to formulate his opinion.  D575 at 41–42.

In the absence of this fundamental information, the district court should have concluded that, in this particular instance the expert was not qualified to render an opinion and that, in any event, his opinion was not reliable.  An expert "must explain the basis for h[is] opinion and not simply tell the [court] what result

48

it should reach." *United States v. MacKay*, 715 F.3d 807, 838 (10th Cir. 2013)
(internal quotation marks omitted).  That is precisely what the fingerprint expert
did in Walker's case.  In essence, the expert testified that he had looked at the
fingerprint cards, that he had decided they were identical, and that the court should
just take his word for that.  D575 at 29–33.  That testimony was too unreliable to
be deemed proof beyond a reasonable doubt and, since that was the only evidence
that the government offered to prove identity, it failed to satisfy the requirements
of section 851(c)(1).

The government should not be given a second opportunity to meet its
evidentiary burden.  It was fully aware of the deficiencies in its proof, yet it did
not seek a continuance either to correct those deficiencies or to provide Walker a
fair opportunity to cross-examine the expert witness.  D575 at 29–45.  And, it
would have been a simple thing for it to correct the problem; the evidentiary
hearing was on October 18, 2012, D575, the court postponed ruling until a later
date, D575, and did not rule until November 27, 2012, D576 at 5.

Moreover, the government plainly filed the section 851 information only
because Walker decided to go to trial rather than accept a plea agreement that
failed to include a promise to consider filing a motion acknowledging Walker's

49

U.S. v. Walker, Appeal No. 12-16451

substantial assistance in persuading Fernandez to plead guilty.  D399; D576 at 75.

It is highly unlikely that the United States Attorney now would authorize the

prosecutor to file a section 851 information in Walker's case.  In the August 12,

2013, memorandum from Attorney General Eric Holder to United States

Attorneys,[4] General Holder announced a new policy of filing section 851

informations only when a "defendant is involved in conduct that makes the case

appropriate for severe sanctions."  As demonstrated in this brief, Walker was just

one of a group of methamphetamine addicts who manufactured the drug to satisfy

their habits.  *See* Statement of Facts at 4–9.  None of the factors that now justify

filing a section 851 information apply in Walker's case, and the consideration of

"[w]hether the filing would create a gross sentencing disparity with equally or

more culpable co-defendants" particularly mitigates against it, as demonstrated in

our Arguments IV.C and IV.D.  Despite that the government chose to paint Walker

differently than others, in actuality his criminal conduct is barely distinguishable

from that of many of his co-actors.  *See* Statement of Facts at 4–9.  For all of these

reasons, this Court should not give the government a second chance to try and

---

[4]The memorandum can be found at
http://www.justice.gov/oip/docs/ag-memo-department-policypon-charging-mandat
ory-minimum-sentences-recidivist-enhancements-in-certain-drugcases.pdf

50

U.S. v. Walker, Appeal No. 12-16451

prove that Walker was convicted of the prior drug offense.

Walker acknowledges that, in *United States. v. Harris*, No. 12–14482, 2014 WL 292381 (11th Cir. January 28, 2014), this Court held that the question of whether a jury must decide factual issues pertinent to a section 851 information is governed by *Almendarez–Torres v. United States*, 523 U.S. 224, 226–27, 118 S. Ct. 1219, 1222, (1998), and not by *Alleyne v. United States*, 133 S. Ct. 2151 (2013). Nonetheless, in anticipation that the Supreme Court will vacate *Almendarez-Torres*, Walker asserts that a jury should have decided whether the government had proved beyond a reasonable doubt that he had committed the Missouri offense since that determination raised his minimum and maximum penalty. That would have made a real difference in Walker's case, because no jury could reasonably have decided that he had committed the Missouri offense based upon the insufficient evidence presented by the government.

Accordingly, this Court should vacate Walker's judgment and sentence and remand for resentencing without the section 851 enhancement.

51

U.S. v. Walker, Appeal No. 12-16451

### C. THE GOVERNMENT VIOLATED WALKER'S RIGHT TO DUE PROCESS BY TAKING UNJUSTIFIABLY INCONSISTENT POSITIONS AS TO THE QUANTITY OF DRUGS FOR WHICH MEMBERS OF THE CONSPIRACY SHOULD BE HELD ACCOUNTABLE AND AS TO WHAT CONDUCT SUPPORTED A ROLE ADJUSTMENT.

On the same record, the government took positions as to drug quantity and role-in-the-offense at Walker's trial and sentencing that were drastically different from the position it took in his twelve codefendants' plea agreements and sentencings. This violated Walker's right to due process of law.

The due process clause prohibits the government from presenting inconsistent theories on a core point when it prosecutes multiple defendants for the same crime. *United States v. Fulks*, 683 F.3d 512, 524 (4th Cir. 2012) *(cert. denied, Fulks v. United States*, 134 S. Ct. 52 (2013)); *Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000) ("the use of inherently factually contradictory theories violates the principles of due process"). And "[w]hile it is true that disparity may exist in sentencing co-conspirators, that disparity cannot be justified where the factual findings are inconsistent on the same record." *United States v. Torres*, 81

52

F. 3d 900, 904 (9th Cir. 1996).

Generally, drug quantity controls the offense level that applies to drug offenses, USSG §2D1.1(a)(5), and it cannot be seriously argued that this is anything other than a factual determination. *See United States v. Agis–Meza*, 99 F.3d 1052, 1054–55 (11th Cir. 1996) (drug quantity is a fact that the government must prove at sentencing by a preponderance of the evidence). Indeed, "[a]lthough sentencing may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, sentencing cannot be based on calculations of drug quantities that are merely speculative." *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir.1998). Thus the factual determination of the amount of drugs involved in a conspiracy should not vary depending on whether a defendant pleads guilty or goes to trial.

In Walker's case, the government claimed that its indictment charged one broad conspiracy, D574 at 5–6, and, at Walker's trial, it urged the jury to take into account all methamphetamine that every manufacturer had created to decide that the conspiracy involved 50 grams or more of methamphetamine, D574 at 48–51. At all other sentencings, however, it argued that Walker's coconspirators should be held accountable only for the amount of methamphetamine that could be

53

manufactured from the pseudoephedrine they alone had purchased.  D339 at 11;
*see* Statement of Facts (Table) at 26.  As to two manufacturers (Bujno and
Padgett), the government claimed that because the quantity of drugs could not be
"readily determined" the court should use 50% of their pseudoephedrine purchases
to calculate the drug quantity.  D337 at 21; D661 at 52–53.  And, without using
the cannot-be-readily-determined explanation, it took the same position as to drug
quantity with regard to every other defendant—including manufacturers—except
for Walker.  D339 at 11; *see* Statement of Facts (Table) at 26.  In each case, the
district court accepted the government's position as to the quantity of drugs.  *See*
Statement of Facts at 22–28.

At Walker's sentencing, despite that his conduct was indistinguishable
from that of the other manufacturers, the government took the position that he
should be held accountable for both the quantity of methamphetamine derived
from his own pseudoephedrine purchases, but also for the quantity of
methamphetamine derived from his suppliers's pseudoephedrine purchases.  D576
at 14–19.  The court accepted this completely contradictory factual position and
held Walker accountable for more than 500 grams of methamphetamine despite
that, if the court had used the same method it applied in sentencing every other

coconspirator, Walker would have been held accountable for only 129.72 grams. D576 at 14–15.

"The preponderance of evidence is a relaxed evidentiary standard, however, it does not grant the court a license to sentence a defendant in the absence of sufficient evidence when that defendant has properly objected to a factual conclusion." *Agis–Meza*, 99 F.3d at 1055. If in the coconspirators' cases the government could not prove more than the quantity derived from personal pseudoephedrine purchases, then it could not prove more than that in Walker's case. Although the government may contend that its calculation was correct in Walker's case, and wrong in each of his coconspirators's cases, that does not resolve the due process issue.

Similarly, the applicability of a role enhancement pursuant to USSG §3B1.1(a) is a fact that the government must prove by a preponderance of the evidence. *United States v. Martinez*, 584 F.3d 1022, 1026–27 (11th Cir. 2009). Yet, at Walker's sentencing, the government took the position that he should be deemed a leader because he had taught other how to manufacture methamphetamine, had used his property to manufacture methamphetamine, had recruited suppliers, had not liked others becoming competitors, and had asked

55

Kirkland to dispose of materials.  D576 at 61–62.  As to other defendants who had

engaged in virtually identical conduct, such as at least Fernandez and Bujno,

however, the government urged no role-in-the-offense adjustment, much less an

organizer or leader role.  Docs. 514, 523, 525, 647, 661.  Again, the facts do not

change simply because a defendant goes to trial instead of pleading guilty.  These

same facts either did support a role-in-the-offense adjustment or they did not.  This

inconsistency also violated Walker's right to due process of law.

　　　"To establish plain error, a defendant must show there is (1) error, (2) that is

plain, and (3) that affects substantial rights.  If all three conditions are met, [this

Court] may exercise [its] discretion to recognize a forfeited error, but only if the

error seriously affect[s] the fairness, integrity or public reputation of judicial

proceedings."  *United States v. Evans*, 478 F.3d 1332, 1338 (11th Cir. 2007)

(internal quotation marks omitted).  By the time it sentenced Walker, D561, the

district court already had sentenced other manufacturers.  See Docs. 474, 481, 482,

483, 485, 523, 525.  Accordingly, the court well knew that, at the government's

urging, it had held manufacturers accountable only for the quantity of

methamphetamine derived from their personal purchases of pseudoephedrine. *See*

Statement of Facts at 22–28.  The court should have recognized that the

56

government was taking a massively contradictory position in urging it to hold Walker accountable also for methamphetamine derived from his suppliers's purchases. The inconsistency was plain and inexplicable, and the district court's failure to see and reject it as violating Walker's due process rights was also plain and inexplicable.

Unquestionably, the court's deviating from the standard method of determining drug quantity in this conspiracy affected both Walker's substantial rights and the fairness and integrity of his sentencing. Had Walker been held accountable only for the quantity of methamphetamine that would have been manufactured from his personal purchases of pseudoephedrine, like the other manufacturers, that drug quantity would have been only 129.72 grams, D576 at 14–15, and his base offense level would have been 32 as opposed to level 36, a four-level difference. *See* USSG §2D1.1(c)(2) and (c)(4). And, removing the adjustment for leader or organizer would take his offense level down to level 28. Assuming that this Court removes the section 851 enhancement based upon the lack of proof described in argument IV.B, these corrections alone reduce Walker's sentencing range to 130 to 162 months' imprisonment.

In *Bradshaw v. Stumpf*, 545 U.S. 175, 180–81, 125 S. Ct. 2398, 2403–04

57

U.S. v. Walker, Appeal No. 12-16451

(2005), the Supreme Court considered the circumstance in which the government argued in one case that a defendant had murdered a victim, and subsequently argued in a different case that another defendant had murdered the same victim. Although the court held that in that case the inconsistency did not provide grounds to vacate Stumpf's guilty plea, it noted that "[t]he prosecutor's use of allegedly inconsistent theories may have a more direct effect on Stumpf's sentence[,]" and it remanded the case for the sentencing court to consider how the prosecutor's actions may have affected Stumpf's due process rights at sentencing. *Stumpf*, 545 U.S. at 187–88, 125 S. Ct. at 2407–08. In Walker's case, the record establishes that the prosecutor's use of inconsistent theories had a direct effect on Walker's sentence.

Accordingly, this Court should vacate Walker's sentence and remand with instructions that the district court employ the same method for determining quantity of drugs and role-in-the-offense that it employed in sentencing Walker's coconspirators.

58

U.S. v. Walker, Appeal No. 12-16451

### D.     THE DISTRICT COURT IMPOSED A PROCEDURALLY

### AND SUBSTANTIVELY UNREASONABLE SENTENCE.

The district court erred in calculating Walker's offense level and sentencing

range and imposed a sentence that is unreasonably severe.

### 1.     The Drug Quantity

In addition to the fact that the method of calculating drug quantity violated

Walker's due process rights, as demonstrated in Argument IV.C, that method also

improperly counted drug quantities that were outside the scope of the conspiracy.

As demonstrated in Argument IV.A, many coconspirators ran their own

methamphetamine-manufacturing enterprises separate and apart from Walker.

Yet, at sentencing, the government contended that Walker should be held

accountable for quantities of methamphetamine that would have been

manufactured using Dasher's, Wilson's, Warner's, and Culp's pseudoephedrine

purchases, D576 at 14–19, despite that each of these individuals had their own

manufacturing operations, *see* Statement of Facts at 4–9.

The district court abused its discretion in overruling Walker's well-founded

objection to being held accountable for quantities of methamphetamine that were

not manufactured as part of the limited conspiracy that he was involved in.  D575

59

at 16; D575 at 7–9; D576 at 12–13.

### 2.    Adjustment for use of violence

Over Walker's objection, D575 at 10–11; D576 at 35, the district court

applied a 2-level upward adjustment, D576 at 44, pursuant to USSG §2D1.1(b)(2),

which provides for a two-level upward adjustment "[i]f the defendant used

violence, made a credible threat to use violence, or directed the use of violence."

Necessarily, from the guideline provision's plain language, the use of violence

must have been in relation to the drug offense.

The PSR recommended this adjustment based upon Dasher's, Lutz's, and

Rigg's alleged claims that Walker had physically abused them.  PSR ¶¶ 45, 47, 49,

71.  Agent Johns testified that Lutz had reported that Walker had severely

physically abused her, but he also testified that he "tried to steer clear of that

because it had nothing to do with our investigation[.]"  D576 at 27.  Agent Johns

testified that Dasher had advised that Walker had threatened her with physical

violence, but he could not recall Riggs' claiming abuse or threats of abuse.  D576

at 28.  On cross-examination, Agent Johns conceded that neither Lutz,  Dasher,

nor Riggs had asserted that the alleged abuse had been related to the conspiracy.

D576 at 29–30.  Accordingly, the evidence failed to show by a preponderance of

U.S. v. Walker, Appeal No. 12-16451

the evidence that any of the use or threat of violence described in the PSR had

been in relation to the drug conspiracy.

The district court clearly erred insofar as it took into account Agent John's

testimony concerning Lacey's claims of abuse, D576 at 28–29, or information that

the court had learned during other sentencing proceedings, D576 at 41–42.

Having received no advance notice of Lacey's claims or the other information,

Walker was unable to adequately contest those facts at the sentencing hearing.

USSG §6A1.3(a) provides "[w]hen any factor important to the sentencing

determination is reasonably in dispute, the parties shall be given an adequate

opportunity to present information to the court regarding that factor." And, Fed.

R. Crim. P. 32(i) provides that when a sentencing court intends to rely on

information outside of the PSR it must give the parties a written summary of that

information. *See United States v. Manrique*, 959 F.2d 1155, 1158 (1st Cir. 1992)

("when a court relies on facts or factors not raised in the PSI when sentencing a

defendant, notice of this reliance must be given to the defendant and counsel, so

that they may have an opportunity to challenge the accuracy of the facts on which

the court will base the sentence"). "Otherwise the purpose of Rule 32(c), to ensure

the accuracy of sentencing information, would be defeated." *United States v.*

61

*Otero*, 868 F.2d 1412, 1415 (5th Cir. 1989).

Accordingly, because the government failed to prove those allegations of use of violence identified in the PSR, to apply this adjustment the court necessarily improperly relied on information outside of the PSR.

### 3. Adjustment for Endangering a Minor

Over Walker's objection, D576 at 52–53, the district court applied a 2-level upward adjustment, D576 at 59, pursuant to USSG §2D1.1(b)(13)(D), which states that, when a methamphetamine-manufacturing operation "created a substantial risk of harm to the life of a minor … increase by 6 levels." The guidelines plainly intend that this major 6-level adjustment will apply only to a defendant's manufacturing laboratory. The caption of USSG §2D1.1, comment. (n.20) references "Harm Associated with the Manufacture of Amphetamine and Methamphetamine." In describing the "Factors to Consider," the guidelines reference substances found at and the location of the "laboratory." USSG §2D1.1, comment. (n.20(A)(i) and (iv)). Furthermore, this 6-level adjustment is limited to those cases in which a manufacturing operation created a "*substantial*" risk of harm. USSG §2D1.1(b)(13)(D).

Walker argued that no one had manufactured methamphetamine in the

house where his daughter resided, that the limited use of his house was not of a

nature to endanger the child, and that the use of the separate trailer or shed also

did not endanger the child.  D576 at 52–53.  The government countered that

Walker had stored dried and bagged methamphetamine in the house and that

methamphetamine oil, pills, and batteries had been found in the house.  D576 at

55–56.  The government's vague mention of the results of the execution of a

search warrant did not satisfy its burden to prove by the preponderance of the

evidence that his offense had created a substantial risk of harm to Walker's

daughter.  The government failed to even proffer, much less prove, that the

presence of the specified items in the family home posed a danger.  D576 at

55–56.  It certainly failed to present any evidence that the items stored in the house

posed a *substantial* risk of harm to Walker's daughter.

Notably, "some of the Note 20(A) factors, such as the manner of chemical

disposal, the likelihood of release into the environment, the extent of the

manufacturing operation, and the number of human lives endangered, are of little

significance in determining whether a methamphetamine manufacturing offense

created a substantial risk of harm to the life of a particular minor child." *United

States v. Patterson*, 481 F.3d 1029, 1034 n.3 (8th Cir. 2007).  Courts considering

what conduct poses a substantial risk generally have required evidence showing a clear and present threat of harm, not proof of the mere presence of the minor somewhere in the vicinity of the manufacturing laboratory.  *See e.g., United States v. Williams*, 199 F. App'x 828, 830 (11th Cir. 2006) (defendant manufactured methamphetamine in secret room in house where minors resided); *United States v. Florence*, 333 F.3d 1290, 1293 (11th Cir. 2003) (evidence established fire endangered minors present in hotel where defendant manufactured methamphetamine); *Patterson*, 481 F.3d at 1034 (testimony of forensic chemist established risk of harm); *United States v. Whited*, 473 F.3d 296, 299 (6th Cir. 2007) (evidence established minor's presence in laboratory); *United States v. Durham*, 470 F.3d 727, 734 (8th Cir 2006) (evidence established minor's presence in laboratory); *but see United States v. Rodriguez*, 140 F. App'x 45, 48–49 (11th Cir. 2005) (affirming endangerment-of-a-minor enhancement when manufacturing operation "was just 25 feet from the house/residence and there was a dump pit filled with chemicals next to the shed").

In the absence of any evidence establishing that Walker used the residence to manufacture methamphetamine, that his daughter had ever been present in a laboratory during a manufacturing operation, or that the storing of supplies in the

U.S. v. Walker, Appeal No. 12-16451

family home presented a substantial risk, the district court abused its discretion in applying this 6-level upward adjustment

### 4. Adjustments for role in the offense and witness intimidation

Over Walker's objection, D576 at 59–60, the district court applied a 4-level upward adjustment, D576 at 64, pursuant to USSG §3B1.1, for his alleged leadership role in the offense, and, relatedly, applied a 2-level upward adjustment pursuant to USSG §2D1.1(b)(14)(D), D576 at 44, which provides for a 2-level upward adjustment when a defendant receives a role-in-the-offense adjustment and engaged in witness intimidation.

For a role-in-the-offense adjustment to apply, the government must prove that one or more of the seven factors set forth in USSG §3B1.1. comment. n. 4 apply: "1) decision making authority, 2) nature of participation, 3) recruitment, 4) larger share in profits, 5) degree of participation in planning and organizing, 6) nature and scope of the offense, and 7) the degree of control and authority exercised." *United States v. Martinez*, 584 F.3d 1022, 1028 (11th Cir. 2009).

Walker argued that he was but one of a group of methamphetamine addicts, some of whom manufactured, some of whom supplied, and all of whom shared the product, with no identifiable leaders, organization, or structure.  D576 at 59–60.

65

The government failed to prove that Walker had authority to make any decisions other than whether he would, or would not, share with suppliers methamphetamine that he manufactured.  The evidence did not establish that Walker had recruited his suppliers; to the contrary, the suppliers sought out manufacturers who would provide them drugs.  D571 at 42.  There is no evidence that Walker participated in planning or organizing the activities of the suppliers or that he had any control over whether they would bring their supplies to him or to another manufacturer.  The government argued that Walker's teaching others how to manufacture methamphetamine, his allowing others to use his camper, his having others assist in manufacturing, and his recruiting suppliers made him a leader.  D576 at 61–63.  As demonstrated in Argument IV.C, however, if this was sufficient all of the manufacturers would have been subject to this adjustment, and, except for Walker, none were.

Because the section 3B1.1 adjustment does not apply, the section 2D1.1(b)(14)(D) adjustment cannot apply.

### 5.    Substantive reasonableness

In *United States v. Irey*, 612 F.3d 1160, 1219 (11th Cir. 2010), this Court stated:

66

U.S. v. Walker, Appeal No. 12-16451

> Section 3553(a) requires that district courts in
> sentencing, and courts of appeals in reviewing sentences,
> "consider ... the need to avoid unwarranted sentence
> disparities among defendants with similar records who
> have been found guilty of similar conduct." 18 U.S.C. §
> 3553(a)(6). This factor is a particularly important one
> when reviewing the substantive reasonableness of a
> sentence because one of the primary purposes of
> appellate review of sentences is to iron out differences in
> order to avoid undue disparity.

We acknowledge that generally this Court has concluded that when disparities in

codefendants' sentences can be explained by procedural differences that give rise

to disparate guidelines computations, 18 U.S.C. § 3553(a)(6) does not apply. *See,*

*e.g., United States v. Docampo*, 573 F.3d 1091, 1093 (11th Cir. 2009) ("Because

the other conspirators either pleaded guilty and agreed to cooperate or were not

prosecuted in federal court, we conclude that they are not similarly situated to

Docampo and any disparity in sentences is warranted."); *United States v. Dorman*,

488 F.3d 936, 944–45 (11th Cir.2007) (in reviewing reasonableness of a

defendant's sentence, this Court examined the co-defendants' sentencing

proceedings and found that they were not similarly situated because they had

provided substantial assistance).

    In Walker's case, however, despite that he and many of his codefendants

had engaged in virtually identical conduct, the government set out to unjustifiably

place Walker in a different category, with the result that his 300-month sentence is double that of Fernandez's and many, many years longer than the other manufacturers.  D576 at 300; *see* Statement of Facts at 22–28.  The factual statements appended to every plea agreement of Walker's coconspirators did not focus on those individual's conduct, but instead focused on Walker's conduct, Docs. 337, 338, 339, 348, 349, 354, 365, 366, 380, 381, 628, which minimized the coconspirators' culpability and exaggerated Walker's culpability.  This occurred despite that Walker had proffered in reliance on oral promises that later were withdrawn and had caused Fernandez to plead guilty.  D575 at 47–50, 54–55; D576 at 74–75.

And, as demonstrated in Argument I.C, the government took inconsistent factual positions that minimized Walker's coconspirators' sentences and that maximized Walker's sentence.  Moreover, frequently at the government's urging, the district court made inconsistent rulings that led to even greater disparities, such as its method of calculating drug quantity, the absence of any role-in-the-offense adjustments, the decision that Bujno's methamphetamine-manufacturing operation did not create a substantial risk of harm to her minor daughter despite that, unlike in Walker's case, Bujno actually conducted some manufacturing activities in the

68

family home, and the court's determination that Fernandez had not maintained

premises for manufacturing drugs, but that Walker had done so.  *See* Statement of

Facts at 16–28.

      This is not the typical case in which these kinds of disparities can be

justified.  The district court knew the facts, knew what factual determinations it

previously had reached, and knew what sentences it had imposed on Walker's

coconspirators.  In the light of all of this information, the court imposed an

unreasonably harsh sentence when it imprisoned Walker for 300 months, which is

a tremendously longer period of time than the court imprisoned other

manufacturers whose conduct was indistinguishable from Walker's conduct.

      In sum, because the district court imposed both a procedurally and

substantively unreasonable sentence, this court should vacate the judgment.

69

U.S. v. Walker, Appeal No. 12-16451

**V.**                                  **CONCLUSION**

Walker respectfully requests that this Court vacate the jury's verdict and

the judgment of the district court, and remand this case for a new trial.

Respectfully submitted,

s/Judy K. Hunt
Judy K. Hunt
Law Office of Judy K. Hunt, P.A.
Florida Bar No. 309842
4905 34th St. S., #142
St. Petersburg, Fl. 33711
727-422-4572
February 11, 2014                jkhuntlaw@outlook.com

U.S. v. Walker, Appeal No. 12-16451

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME

## LIMITATION

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13904 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4.

U.S. v. Walker, Appeal No. 12-16451

## CERTIFICATE OF SERVICE

I certify that on February 11, 2014, via CM/ECF, a copy of this document

was served on:

Michelle Thresher Taylor, counsel for the United States.


<u>s/Judy K. Hunt</u>

Judy K. Hunt
Law Office of Judy K. Hunt, P.A.
Florida Bar No. 309842
4905 34th St. S., #142
St. Petersburg, Fl. 33711
727-422-4572
jkhuntlaw@outlook.com