APPEAL NO. 12-16451
DISTRICT COURT NO. 3:11-cr-00217-HLA-JRK-1

IN THE
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

RONALD WALKER,
Defendant-Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

REPLY BRIEF OF RONALD WALKER
CRIMINAL CASE

Respectfully submitted,

Judy K. Hunt
Law Office of Judy K. Hunt, P.A.
Florida Bar No. 309842
4905 34th St. S., #142
St. Petersburg, Fl. 33711
727-422-4572
April 21, 2014                jkhuntlaw@outlook.com

U.S. v. Walker, Appeal No. 12-16451

# CERTIFICATE OF INTERESTED PERSONS

# AND CORPORATE DISCLOSURE STATEMENT

The following persons and/or entities[*] have an interest in the outcome of this case:

Adams, Henry Lee, Jr., Senior United States District Judge;

Barksdale, Patricia D., United States Magistrate Judge, former appellate counsel;

Barry, Harold, co-defendant;

Bell, Thomas, Esquire, counsel for co-defendant Fernandez;

Bentley, Arthur Lee, III, Acting United States Attorney

Bettman, Gerald, Esquire, counsel for co-defendant Padgett;

Bujno, Eva, co-defendant;

Bullock, Charles, Jr., co-defendant;

Collins, Clyde, Jr., Esquire, counsel for co-defendant Lutz;

Dasher, Lucy, co-defendant;

Dunham, Shirley Wilson, counsel for co-defendant Riggs;

Fernandez, Shaun, co-defendant;

---

[*]Hunt, McNamara, Rhodes, and Taylor are added to the Appellant's initial Certificate of Interested Persons and Corporate Disclosure Statement.

i

U.S. v. Walker, Appeal No. 12-16451

Foster, William, co-defendant;

Haine, Ross Scott, II, Esquire, counsel for co-defendant Kirkland;

Hernandez, James A., Esquire, counsel for co-defendant Wilson;

Hunt, Judy K., appellate counsel for Ronald Walker;

Kirkland, Cindy, co-defendant;

Landes, Richard, J., Esquire, counsel for co-defendant Bujno;

Lawrence, Noel, Esquire, counsel for co-defendant Foster;

Lutz, Danielle, co-defendant;

McNamara, Linda Julin, Assistant United States Attorney, appellate counsel

Maxwell, Ronald, Esquire, counsel for co-defendant Bullock;

O'Neill, Robert, former United States Attorney;

Padgett, Anthony, co-defendant;

Rhodes, David P., Assistant United States Attorney, Chief, Appellate

Riggs, Jacklyn, co-defendant;

Rivers, Robert Calvin, Esquire, counsel for co-defendant Dasher;

Rolle, Wade, Esquire, counsel for co-defendant Warner;

Savell, Julie H., Assistant United States Attorney, district court counsel;

Taylor, Michelle Thresher, Assistant United States Attorney, appellate counsel;

U.S. v. Walker, Appeal No. 12-16451

Truncale, Charles L., Esquire, district court counsel for Ronald Walker;

Walker, Ronald, defendant/appellant;

Warner, Thomas, co-defendant; and

Wilson, Jennifer, co-defendant

U.S. v. Walker, Appeal No. 12-16451

**TABLE OF CONTENTS**                                         **PAGE NO.**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF CITATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

ARGUMENT AND CITATIONS OF AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . 1

      A.    THE DISTRICT COURT ABUSED ITS DISCRETION IN

           DENYING WALKER'S MOTIONS FOR  JUDGMENT OF

           ACQUITTAL AND A NEW TRIAL WHEN EVIDENCE OF

           OTHER CONSPIRACIES CONSTITUTED SUCH A VARIANCE

           FROM THE CHARGE IN THE INDICTMENT THAT WALKER

           WAS UNFAIRLY SUBJECTED TO HIGHLY PREJUDICIAL

           SPILLOVER, PARTICULARLY AS TO THE JURY'S

           DETERMINATION OF DRUG QUANTITY.. . . . . . . . . . . . . . . . 1

           1.    Evidence that individuals know that others are engaging

           in identical criminal conduct does not establish the type of "common

           goal" required to prove a conspiracy... . . . . . . . . . . . . . . . . . . . . . . 2

iv

U.S. v. Walker, Appeal No. 12-16451

2.    The fact that Walker taught a few others how to manufacture methamphetamine does not make him a coconspirator in all of his students' separate drug-manufacturing activities... . . . . . . . 6

3.    The variance affected Walker's substantial rights.. . . . . 7

4.    The jury instructions did not cure the prejudice from proof of multiple conspiracies but exacerbated it.. . . . . . . . . . . . . . 9

B.    THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT WALKER HAD BEEN CONVICTED OF THE PRIOR OFFENSE IDENTIFIED IN THE 21 U.S.C. § 851 INFORMATION.. . . . . . . . . . . . . . . . . . . . . . . . . . . 13

C.    THE GOVERNMENT VIOLATED WALKER'S RIGHT TO DUE PROCESS BY TAKING UNJUSTIFIABLY INCONSISTENT POSITIONS AS TO THE QUANTITY OF DRUGS FOR WHICH MEMBERS OF THE CONSPIRACY SHOULD BE HELD ACCOUNTABLE AND AS TO WHAT CONDUCT SUPPORTED A ROLE ADJUSTMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D.    THE DISTRICT COURT IMPOSED A PROCEDURALLY AND SUBSTANTIVELY UNREASONABLE SENTENCE.. . . . . . . . . . 19

v

U.S. v. Walker, Appeal No. 12-16451

1.    The Drug Quantity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

2.    Adjustment for Use of Violence.. . . . . . . . . . . . . . . . . . . . . . 20

3.    Adjustment for Endangering a Minor. . . . . . . . . . . . . . . . . . 23

4.    Adjustments for Role in the Offense and Witness

      Intimidation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

5.    Substantive Reasonableness.. . . . . . . . . . . . . . . . . . . . . . . . . 30

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

CERTIFICATE OF SERVICE

U.S. v. Walker, Appeal No. 12-16451

## TABLE OF CITATIONS

**CASES CITED**                                      **PAGE NO.**

*Alleyne v. United States*, 133 S. Ct. 2151 (2013) . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344 (11th Cir. 2003). . . . 16

*United States v. Anguiano*, 873 F. 2d 1314 (9th Cir. 1989). . . . . . . . . . . . . . . . . 8

*United States v. Beal*, 698 F.3d 248 (6th Cir. 2012).. . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Calderon*, 127 F.3d 1314 (11th Cir. 1997) . . . . . . . . . . . . . . . . 2

*United State v. Chandler*, 388 F.3d 796 (11th Cir. 2004) . . . . . . . . . . . . . . . 3, 4, 7

*United States v. Corey*, 566 F.2d 429 (2d Cir. 1977). . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Curbelo*, 726 F.3d 1260 (11th Cir. 2013).. . . . . . . . . . . . . . . . . 11

*United States v. Daniels*, 723 F.3d 562 (5th Cir. 2013). . . . . . . . . . . . . . . . . . . . 11

*United States v. Dellosantos*, 649 F.3d 109, 125 (1st Cir. 2011). . . . . . . . . . . . . 10

*United States v. Edmonds*, 348 F.3d 950 (11th Cir. 2003) . . . . . . . . . . . . . . . . . 24

*United States v. Glinton*, 154 F.3d 1245 (11th Cir. 1998). . . . . . . . . . . . . . . . . . 3

U.S. v. Walker, Appeal No. 12-16451

*United States v. Green*, 446 F. App'x 199 (11th Cir. 2011). . . . . . . . . . . . . . . . . 24

*United States v. Irey*, 612 F.3de 1160 (11th Cir. 2010). . . . . . . . . . . . . . . . . . . . 30

*United States v. Johns*, 686 F.3d 438, 454 (7th Cir. 2012). . . . . . . . . . . . . . . . . . 6

*United States v. Lockett*, 391 F. App'x 837 (11th Cir. 2010). . . . . . . . . . . . . . . . 15

*United States v. Matos-Rodriguez*, 188 F.3d 1300 (11th Cir.1999) . . . . . . . . . . 21

*United States v. McCauley*, 715 F.3d 1119 (8th Cir. 2013). . . . . . . . . . . . . . . . . 8

*United States v. Offill*, 666 F. 3d 168 (4th Cir. 2011). . . . . . . . . . . . . . . . . . . . . 8

*United States v. Reeves*, 742 F.3d 487 (11the Cir. 2014). . . . . . . . . . . . . . . . . . . 3

*United States v. Richardson*, 532 F.3d 1279 (11th Cir. 2008) . . . . . . . . . . . . . . . 8

*United States v. Rodriguez*, 140 F. App'x 45 (11th Cir. 2005). . . . . . . . . . . . . . . 25

*United States v. Romain*, 393 F.3d 63 (1st Cir. 2004) . . . . . . . . . . . . . . . 17, 23, 26

*United States v. Seher*, 562 F.3d 1344 (11th Cir.2009). . . . . . . . . . . . . . . . . . 3, 5

*United States v. Sells*, 477 F.3d 1226, 1238 (10th Cir. 2007) . . . . . . . . . . . . . . . 10

*United States v. Sir Kue Chin*, 534 F.2d 1032 (2d Cir. 1976) . . . . . . . . . . . . . . . 7

*United States v. Stewart*, 104 F.3d 1377 (D.C. Cir. 1997). . . . . . . . . . . . . . . . . . 7

*United States v. Swafford*, 512 F.3d 833 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . 11

U.S. v. Walker, Appeal No. 12-16451

*United States v. Weeks*, 185 F. Appx 773 (11th Cir. 2006). . . . . . . . . . . . . . . 24, 25

*United States v. Young*, 330 F. App'x 791 (11th Cir. 2009).. . . . . . . . . . . . . . . 25

**RULES CITED**

Fed. R. Crim. P. 32(i)(3)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**OTHER AUTHORITIES CITED**

USSG §2D1.1, comment. (n.3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

USSG §2D1.1(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 22, 23

USSG §2D1.1(b)(13)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

USSG §2D1.1(b)(14)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 30

USSG §2D1.1(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

USSG §2D1.1(c)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

USSG §2D1.1(b)(13)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

USSG §3B1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

U.S. v. Walker, Appeal No. 12-16451

## ARGUMENT AND CITATIONS OF AUTHORITY

**A.** **THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING WALKER'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND A NEW TRIAL WHEN EVIDENCE OF OTHER CONSPIRACIES CONSTITUTED SUCH A VARIANCE FROM THE CHARGE IN THE INDICTMENT THAT WALKER WAS UNFAIRLY SUBJECTED TO HIGHLY PREJUDICIAL SPILLOVER, PARTICULARLY AS TO THE JURY'S DETERMINATION OF DRUG QUANTITY (GOVERNMENT ISSUE I).**

In its response brief, to support its contention that all of the separate methamphetamine-manufacturing operations proved at Walker's trial were part of a single conspiracy, the government relies on proof that: (1) participants shared the common goal of manufacturing and using methamphetamine; (2) Walker and others taught individuals how to manufacture methamphetamine; and (3) "[v]arious combinations of participants" either acted in concert or knew that others were engaged in the same unlawful conduct. Government brief at 28–29. In

1

U.S. v. Walker, Appeal No. 12-16451

addition, the government argues that Walker failed to show that the variance affected his substantial rights.  Government brief at 32–33.

**1.      Evidence that individuals know that others are engaging in identical criminal conduct does not establish the type of "common goal" required to prove a conspiracy.**

That persons who know one another each decide to commit a particular criminal offense, thereby in the general sense sharing a "common goal" to violate the law in a particular fashion do not automatically become coconspirators.  The broad goal of manufacturing and using methamphetamine is not the type of "common goal" required to prove conspiratorial agreement.   Instead, "[t]he key is to determine whether the different sub-groups are acting in furtherance of one *overarching* plan."  *United States v. Calderon*, 127 F.3d 1314, 1329 (11th Cir. 1997) (internal quotation marks omitted) (emphasis added).

Walker does not dispute that the evidence, when viewed in the light most favorable to the government, sufficiently proved that he and his own suppliers acted in concert, but the government stretches conspiracy law too far when it argues that the evidence also sufficiently proved that he was in a conspiratorial relationship with those who became manufacturers in separate, competing

2

U.S. v. Walker, Appeal No. 12-16451

enterprises.  These separate manufacturing operations were not "interdependent," as they had to be to be part of a common plan or goal.  *See United States v. Reeves*, 742 F.3d 487, 499 (11the Cir. 2014).  And, "[i]t is clearly not sufficient simply to say that the defendants each shared a common goal[.] … In order to constitute a single conspiracy there must be a single enterprise which sets up a common goal connecting each defendant."  *United States v. Glinton*, 154 F.3d 1245, 1251 (11th Cir. 1998).  Thus, "[t]he government must establish interdependence amongst the co-conspirators."  *United States v. Seher*, 562 F.3d 1344, 1366 (11th Cir.2009); *accord United States v. Chandler*, 388 F.3d 796, 811 (11th Cir. 2004) (to prove single unified conspiracy, as opposed to series of smaller, uncoordinated conspiracies, government must show interdependence among alleged co-conspirators).

In Walker's case, evidence of the completely separate manufacturing operations showed numerous separate conspiracies in which Walker had no role and had agreed to nothing.  Indeed, the absence of proof of interdependence among these separate manufacturing operations leads to the inescapable conclusion that the government failed to prove a single conspiracy at Walker's trial.  *See Chandler*, 388 F.3d at 811.

3

U.S. v. Walker, Appeal No. 12-16451

> In [Walker's] case, there was no such interdependence of the [manufacturing enterprises]. The combined efforts of the [manufacturing enterprises] were not required to insure the success of [Walker's] venture. No [manufacturing enterprise] depended upon, was aided by, or had any interest in the success of the others. Each [manufacturing enterprise] acted independently and was an end unto itself.

*See id.* at 811–12.

In its brief, the government relies upon broad legal principles that appear to support its argument for a single conspiracy, but this Court must apply those principles to the reality of what happened in this case. To prove Walker guilty of a single conspiracy that encompassed all of the methamphetamine-manufacturing enterprises, the government was required to prove that Walker and the others agreed as follows: "Let us *join together* to manufacture and supply methamphetamine." The evidence instead established that Walker agreed to join together only with those who brought him supplies and who, by doing so, necessarily agreed to Walker's manufacturing activities. The rest of the evidence at trial proved that Walker and the other manufacturers had agreed to something quite different: "Let us *go our own separate ways* to manufacture methamphetamine for our own use and to share with our own suppliers." Indeed, the evidence established that the other manufacturers' activities angered Walker.

4

U.S. v. Walker, Appeal No. 12-16451

D572 at 160–62; D573 at 30–32, 40–51, 87–88.  The fact of this anger, and the

fact that rationally there was no way for Walker to withdraw from the separate

methamphetamine-manufacturing enterprises in which he was uninvolved,

demonstrate that the government proved multiple conspiracies at his trial.

This court should reject the government's contention, government brief at

29, that persons conspire with one another simply by knowing that they are

engaged in the same criminal conduct.  The government relies upon *United States*

*v. Beal*, 698 F.3d 248, 258 (6th Cir. 2012), but Beal was a supplier who provided

goods to multiple manufacturers, sold the finished product, and argued on appeal

that "each cooking session was a separate conspiracy that ended after the cook."

This is not Walker's argument.  Walker argues that the government proved

entirely separate manufacturing operations in which he had *no* involvement.

Moreover, in *Beal*, the court did not require the proof of interdependence that this

Court requires, *see Seher*, 562 F.3d at 1366, but held that merely having a

common goal of committing a particular offense is sufficient, *Beal*, 698 F.3d at

260–61.

U.S. v. Walker, Appeal No. 12-16451

**2.     The fact that Walker taught a few others how to manufacture methamphetamine does not make him a coconspirator in all of his students' separate drug-manufacturing activities.**

The government suggests that whenever a person teaches another how to execute a crime, that teacher forever after is a coconspirator in any criminal activity in which the student employs the lesson; the government stresses that Walker taught a number of persons how to manufacture methamphetamine. Government brief at 28–29. Walker did teach Bujno and Wilson how to manufacture methamphetamine, D571 at 15, 25, 35, 61; D572 at 69, 72–73, was one of three persons—in addition to Wilson and Plum—who taught Fernandez how to manufacture methamphetamine, D571 at 59; D572 at 81–82, 163–69, 214, and was one of three persons—in addition to Fernandez and Plum—who taught Goodman how to manufacture methamphetamine. However, "a criminal who teaches another criminal how to commit a given crime should not be on the hook for every subsequent scheme that the apprentice executes." .

Whenever a methamphetamine manufacturer in this case taught another, his or her student established a competing enterprise, and not one from which the teacher would gain anything. Bujno described it this way:   "Well, once I learned

6

how to make it, it's kind of like a general rule that you don't step on anybody's toes. You don't take off anybody's plate[.] … That's like taking somebody's dope from them, to take their customer. That's like taking their dope." Competing manufacturing operations simply do not act "in concert to further a common goal" as required by *Chandler*, 388 F.3d at 811.

### 3.    The variance affected Walker's substantial rights.

The government argues that Walker's substantial rights could not have been affected because he was tried alone, citing *United States v. Stewart*, 104 F.3d 1377 (D.C. Cir. 1997). Government brief at 32–33. At Stewart's trial, however, the government had specifically "stressed" that he had not participated in all activities described, *id*. at 1382, whereas, in Walker's case the prosecutor urged the jury to conclude that Walker was a coconspirator in all of the separate methamphetamine-manufacturing activities, D574 at 48–51.

Cases that conclude that no prejudicial spillover effect can occur where a sole defendant is tried uniformly are based on the conclusion that the evidence demonstrated that the single defendant was guilty as to *all* conspiracies proved at his trial. *See e.g. United States v. Sir Kue Chin*, 534 F.2d 1032, 1035–36 (2d Cir. 1976) ("The evidence supported the conclusion that appellant was consciously

7

acting as part of a single conspiracy of which he, himself, was the hub.").  Both

*United States v. Richardson*, 532 F.3d 1279, 1288 (11th Cir. 2008) and *United

States v. McCauley*, 715 F.3d 1119, 1125 (8th Cir. 2013), cited by the government

at page 33 of its brief,  involved hub-and-spoke conspiracies and, in each case, the

defendants who proceeded to trial were the hubs of the conspiracies.  In *United

States v. Offill*, 666 F. 3d 168, 178 (4th Cir. 2011), cited by the government at 33,

the court concluded that "all of the evidence presented at trial related to Offill and

not to any other conspiracy of which Offill was not alleged to be a part."  In

*United States v. Anguiano*, 873 F. 2d 1314, 1317–1318 (9th Cir. 1989), and *United

States v. Corey*, 566 F.2d 429, 431 n.3 (2d Cir. 1977), cited by the government at

33, the defendants protested that *they themselves* had been involved in multiple

conspiracies rather than the single conspiracy charged.

　　　　In Walker's case, however, voluminous evidence related to other

manufacturers' separate enterprises in which he played no part.  As described in

detail in our principal brief at 4–9 and 35–38, in addition to proving that Walker

had agreed to manufacture methamphetamine and to share the product with those

who provided him with supplies, the government also proved that, *apart from

Walker's operation*, Fernandez, Bujno, Padgett, Wilson, Warner, Dasher,

U.S. v. Walker, Appeal No. 12-16451

Goodman, and Riggs separately manufactured methamphetamine and shared

product with their own customers.  Thus, the evidence proved at least ten separate

methamphetamine-manufacturing conspiracies—Walker's, Fernandez's, Bujno's,

Padgett's, Wilson's, Foster's, Warner's, Dasher's, Goodman's, and Riggs's.  *See*

Walker's principal brief (Statement of Facts) at 4–9.

In was impossible for Walker's jury to isolate evidence of Walker's sharing

methamphetamine with his suppliers from the evidence of many others' sharing

methamphetamine in transactions that had nothing to do with Walker.  And, the

improper spillover affect was solidified by the government's urging the jury to

consider all of the activity in those separate manufacturing enterprises as part of

the single conspiracy charged.  D574 at 48–51.

**4.    The jury instructions did not cure the prejudice from proof of**

**multiple conspiracies but exacerbated it.**

The government asserts that the multiple-conspiracy jury instruction cured

the variance between the indictment and the evidence, government's brief at

33–34, but that instruction could not have had that affect in Walker's case.  The

instruction that the district court gave is suited to multiple-defendant trials where

the evidence may show that one or more defendants participated in different

9

U.S. v. Walker, Appeal No. 12-16451

conspiracies than that conspiracy charged in the indictment.  In Walker's unique case, where he stood alone at trial, the multiple-conspiracy instruction ordered the jury to convict Walker if it found sufficient evidence of the conspiracy described in the indictment *irrespective* of all of the separate conspiracies proved, and it also ordered it to consider *all* of the evidence in reaching its decision. D420 at 5, 14.

Walker does not rely on instructional error; as the government points out in its brief at 33, n5, he requested this instruction.  Walker does contend, however, that because the instruction quite obviously did not help him, and actually hurt him, this Court should not conclude that the instruction corrected the error in the court's rejecting Walker's motion for judgment of acquittal on the ground of a fatal variance.  Evidence of the other conspiracies quite obviously had a prejudicial spillover affect when the court specifically instructed the jury to consider the evidence of those other manufacturing activities in deciding Walker's guilt or innocence.  It does not matter that the evidence may have been sufficient to convict Walker of one conspiracy, because the proof of all of the other conspiracies in which he did not participate unfairly prejudiced him.  *See United States v. Dellosantos*, 649 F.3d 109, 125–26 (1st Cir. 2011) ("the jury's decision to find the Defendants guilty of joining the conspiracy … was influenced by the

10

U.S. v. Walker, Appeal No. 12-16451

plethora of evidence implicating the other sixteen indicted co-defendants"); *see also United States v. Swafford*, 512 F.3d 833, 843 (6th Cir. 2008) ("Where there is no connection … but the factfinder mistakenly believes there is a union of interest and criminal intent and an agreement to coordinate activity, the harm to the public will appear to be greater and the participants more culpable.")

The government relies upon *United States v. Daniels*, 723 F.3d 562 (5th Cir. 2013), mistakenly citing it as a decision of this Court rather than of the Fifth Circuit Court of Appeals.  Government brief at 35.  In *Daniels*, the court determined that a failure to prove prove drug quantity beyond a reasonable doubt only affects the defendant's sentence, and not his conviction.  *Id*. at 572–73.  This Court should not adopt the Fifth Circuit's holding, at least not in this case.   In *United States v. Curbelo*, 726 F.3d 1260, 1269 (11th Cir. 2013), this Court acknowledged that the Supreme Court in *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013) held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury," and that, therefore, drug quantities must be decided by a jury.  This Court observed that "[a] jury must find beyond a reasonable doubt any drug quantity that changes the maximum penalty." *Curbelo*, 726 F.3d at 1269.  In closing argument in Walker's case, the government urged the

11

U.S. v. Walker, Appeal No. 12-16451

jury to take into account all methamphetamine that every manufacturer had created

to decide that the conspiracy had involved 50 grams or more of methamphetamine.

D574 at 48–51.  Walker's jury had been exposed to evidence of drug quantity far

and beyond the quantity involved in the single conspiracy in which Walker

participated.   D573 at 183–215, 258–62; Gov't Exs. 11A–11J.  Based on *Alleyne*,

Walker had the constitutional right to have a jury decide drug quantity based upon

a trial that fairly portrayed the extent of only that drug-manufacturing operation

described in the indictment.  Accordingly, in this case, this Court should vacate his

conviction and remand for a new trial.

In any event, given the convoluted and improper proof of drug quantity

submitted at Walker's trial, even if this Court determines that a new trial is not

required due to the jury's drug-quantity determination, it should rule that the jury

could not have implicitly or explicitly found that Walker had manufactured

methamphetamine in an amount of more than 50 grams.  The government failed to

present to the jury any clear evidence of how much pseudoephedrine suppliers had

delivered only to Walker.  Moreover, again, it is impossible to know whether, in

reaching its drug-quantity decision, Walker's jury accepted the records of

pseudoephedrine purchases, or instead relied on impermissible coconspirator

12

U.S. v. Walker, Appeal No. 12-16451

testimony that described amounts of methamphetamine manufactured in
transactions unrelated to Walker.

**B.     THE  GOVERNMENT  FAILED  TO  PROVE  BEYOND  A
        REASONABLE  DOUBT  THAT  WALKER  HAD  BEEN
        CONVICTED OF THE PRIOR OFFENSE IDENTIFIED IN
        THE  21  U.S.C.  §  851  INFORMATION  (GOVERNMENT
        ISSUE II).**

The government claims that its fingerprint expert "explained the basis for
his opinion" during redirect examination, at D575 at 38–39.  This examination
began by the government asking about a report and the district court asking,
"Would those notes help you answer the questions that have been proposed by
defense counsel?"  D575 at 36.  The expert responded, "***They may help, but the
report does not detail characteristic by characteristic; but if you would like, we
could refer to that report***," and then explained, "That report does go and actually
breaks it down finger by finger, ***but it just does not break it down as far as
characteristic by characteristic***."  D575 at 36 (emphases added).  When the
witness proceeded to read from the report Walker objected, but the court overruled
the objection.  D575 at 37.  The expert then stated that he had reached an *identical*

13

U.S. v. Walker, Appeal No. 12-16451

*conclusion* as to each fingerprint comparison:  "They both revealed whirl patterns,

both of similar size, shape, and flow.  They both displayed the same minute ridge

characteristic in detail to occupy the same relative and spatial relationship."  D575

at 37–39.  Accordingly, the government is entirely mistaken in its assertion that

the expert "explained the basis for his opinion," government brief at 37; the expert

in fact simply repeated the same ultimate conclusion, fingerprint by fingerprint,

providing no detail at all, D575 at 37–39.  If this truly was the basis for his

conclusion, the expert must have concluded that Walker's two thumbs and eight

fingers all "displayed the same minute ridge characteristic in detail to occupy the

same relative and spatial relationship."  D575 at 38–39.  Such a finding would

completely refute the long-standing concept that fingerprints are all unique.

Moreover, on re-cross examination, the expert admitted that he could not explain

the basis for these conclusions, which, again, he merely had read from his report.

D575 at 39–40.

In essence, the government argues that vague, non-specific, conclusionary

testimony by a fingerprint examiner concerning determinations reached in the past

can prove identity beyond a reasonable doubt.  Government brief at 35–43.  The

government suggests that this Court should take into account that Walker failed to

14

rebut this conclusionary testimony, government's brief at 40, but the burden of proof lay entirely with the government, and the standard was proof beyond a reasonable doubt, as the government concedes.

The government relies on *United States v. Lockett*, 391 F. App'x 837 (11th Cir. 2010), but the language in that case strongly suggests that the expert actually did testify as to the details of the analysis that formed the basis for his conclusions. This Court noted that the fingerprint expert had "explained that he used the analyze, compare, evaluate, and verify methodology to identify the prints, and that he studied ridge characteristics in the prints and used everything he could 'see to make the identification,' including the pattern of the print, ending ridges, dots, and bifurcations." *Id*. at 840. Nothing in the *Lockett* opinion suggests that this Court has endorsed expert fingerprint testimony that consists only of ultimate conclusions and fails to describe bases for those conclusions.

As we argued in our principle brief, a judge must ensure "that an expert's testimony [ ] rests on a reliable foundation," *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993), and when an expert "fails to identify the specific facts upon which his opinion was based," or "fail[s] to explain the basis for an important inference," his opinion should not

U.S. v. Walker, Appeal No. 12-16451

be taken into account, *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344 (11th Cir. 2003). We reiterate that the government should not be given a second opportunity to meet its evidentiary burden, and that this Court may take into account the Department of Justice's change in policy even though that policy does not confer rights or benefits on defendants. We do not argue that the policy is binding in Walker's case, but that it is material to whether the government should get a second bite on this issue.

### C. THE GOVERNMENT VIOLATED WALKER'S RIGHT TO DUE PROCESS BY TAKING UNJUSTIFIABLY INCONSISTENT POSITIONS AS TO THE QUANTITY OF DRUGS FOR WHICH MEMBERS OF THE CONSPIRACY SHOULD BE HELD ACCOUNTABLE AND AS TO WHAT CONDUCT SUPPORTED A ROLE ADJUSTMENT (GOVERNMENT ISSUE III).

The government fails to address Walker's argument in his principal brief at 52–58, that, when sentencing multiple defendants in a single case, due process requires the district court to *make consistent findings of fact based upon an identical record.* Government brief at 43–44.

16

In his principal brief, Walker argued that the government improperly presented, and the district court's improperly adopted, inconsistent theories on a core disputed *factual* point, specifically the quantity of drugs involved in the alleged single conspiracy.  *See* Walker's brief at 53–55.  The government does not distinguish or argue against the holdings of any of the cases Walker cites in his brief at 52–58.  Instead, the government ducks the issue, attempting to re-frame Walker's argument as merely challenging disparate sentences.  *See* government brief at 43–45.  None of the cases the government cites address whether the government may present, and the court may accept, contradictory *evidence* to prove a disputed sentencing fact as to multiple defendants who are convicted of the same conspiracy.  The government also does not dispute that the quantity of drugs is a factual issue or that the government bears the burden to prove that quantity at sentencing.

Therefore, the government waives any contention that the district court properly applied a completely different method of calculating drug quantity in Walker's case than that which it applied in his coconspirators' cases.  *See United States v. Romain*, 393 F.3d 63, 68 (1st Cir. 2004) ("An appellate court is free to deem abandoned claims or defenses that the government (or any other litigant, for

17

U.S. v. Walker, Appeal No. 12-16451

that matter) fails to argue.").

As argued in our principal brief, by the time the district court sentenced Walker, D561, it already had sentenced the other manufacturers, *see* D474, D481, D482, D483, D485, D523, D525. Accordingly, the court well knew that, at the government's urging, it had held other methamphetamine manufacturers accountable only for the quantity of methamphetamine derived from their personal purchases of pseudoephedrine. *See* Walker's principal brief, Statement of Facts at 22–28. The court should have recognized that the government was taking a massively contradictory position in urging it to hold Walker accountable also for methamphetamine derived from his suppliers's purchases. The inconsistency was plain and inexplicable, and the district court's failure to see and reject it as violating Walker's due process rights was also plain and inexplicable.

Unquestionably, the court's deviating from the standard method it employed to determine drug quantity in this conspiracy affected both Walker's substantial rights and the fairness and integrity of his sentencing. Had Walker been held accountable only for the quantity of methamphetamine that would have been manufactured from his personal purchases of pseudoephedrine, like all of the other manufacturers in this purported single conspiracy, that drug quantity would have

18

U.S. v. Walker, Appeal No. 12-16451

been only 129.72 grams, D576 at 14–15, and his base offense level would have been 32 as opposed to level 36, a four-level difference. *See* USSG §2D1.1(c)(2) and (c)(4). And, removing the inconsistent adjustment for leader or organizer would take his offense level down to level 28.

In response to Walker's argument as re-framed by the government, the government argues that the district court did not impose unreasonably disparate sentences. Government brief at 44–48. This argument actually addresses Walker's Issue IV.D., which challenges the substantive reasonableness of his sentence. Accordingly, Walker addresses this portion of the government's argument in his reply to government Issue IV.

### D. THE DISTRICT COURT IMPOSED A PROCEDURALLY AND SUBSTANTIVELY UNREASONABLE SENTENCE (GOVERNMENT ISSUES III AND IV).

The district court erred in calculating Walker's offense level and sentencing range and imposed a sentence that is unreasonably severe.

#### 1. The Drug Quantity

In its response brief at 49–50, the government renews the same arguments it made at Walker's sentencing, which Walker addressed in his principal brief at 59.

19

U.S. v. Walker, Appeal No. 12-16451

The district court abused its discretion in overruling Walker's well-founded objection to being held accountable for quantities of methamphetamine that were not manufactured as part of the limited conspiracy that he was involved in.

### 2.    Adjustment for Use of Violence

In its response brief at 50–53, the government cites Walker's allegedly threatening Culp as supporting the district court's application of a 2-level upward adjustment, D576 at 44, pursuant to USSG §2D1.1(b)(2), which provides for a two-level upward adjustment "[i]f the defendant used violence, made a credible threat to use violence, or directed the use of violence." But the PSR recommended this adjustment based only upon Dasher's, Lutz's, and Rigg's alleged claims that Walker had physically abused them, and not based upon the alleged threat to Culp. PSR ¶¶ 45, 47, 49, 71, 74. Accordingly, Walker had no notice that the government contended that the alleged threat to Culp could support the USSG §2D1.1(b)(2) adjustment.

Indeed, the alleged threat to Culp supported a different two-level adjustment imposed pursuant to USSG §2D1.1(b)(14)(D), for witness intimidation, PSR ¶ 74; D576 at 59, which Walker does not directly challenge in this appeal. The district court and the government treated these two adjustments as separate issues at

20

sentencing; they treated the Culp allegations as specifically related to paragraph 7 of the addendum to the PSR, which addressed only Walker's objection to the section 2D1.1(b)(14)(D) adjustment.  *See* D576 at 25–31 (evidence and argument on PSR ¶ 71 threat-of-violence adjustment); D576 at 31–36, 43–44, 59 (separate evidence and argument on PSR ¶ 74 witness-intimidation adjustment, prosecutor noting, "Your honor, I didn't go into Mr. Culp because that was a separate objection, but I will call the agent … [i]n the objection with regard to Mr. Culp and the threat against him not to testify[.]").

Nothing in the record supports the government's contention, made for the first time on appeal, that the alleged threat to Culp also supports the section 2D1.1(b)(2) adjustment.  Indeed, that adjustment could not apply to the section 2D1.1(b)(2) adjustment because the structure of the guideline and the commentary, USSG 2D1.1, comment. (n.3), plainly contemplate that the threat of violence be made during and as part of the offense.  Moreover, the government's raising this contention for the first time on appeal deprived Walker of the opportunity to assert in the district court that applying both adjustments based on the alleged Culp threat would constitute improper double counting.  *See United States v. Matos-Rodriguez*, 188 F.3d 1300, 1309 (11th Cir.1999) ("Impermissible

21

double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.") (quotation marks omitted).

Accordingly, in the absence of the government arguing at sentencing that the district court should take the alleged Culp threat into account in considering the section 2D1.1(b)(2) adjustment, and in the absence of any showing that the district court did take that into account in applying the section 2D1.1(b)(2) adjustment, this Court should not consider for the first time whether the alleged threat to Culp can or does supports the section 2D1.1(b)(2) adjustment.

In its brief, the government fails to address Walker's argument that it failed to show by a preponderance of the evidence that any of the use of violence or threats of violence incorporated into paragraph 71 of the PSR (PSR ¶¶ 45, 47, 49), which purportedly supported the section 2D1.1(b)(2) adjustment, had been in relation to the drug conspiracy. Government brief at 50–53. The government also does not address Walker's argument—nor the authorities supporting that argument—that, because Walker had received no advance notice of Lacey's claims or of information that the court received during co-defendants' sentencings,

22

the district court could not take into account Agent John's testimony concerning

Lacey's claims of abuse, D576 at 28–29, or take into account information that the

court had learned during other sentencing proceedings, D576 at 41–42.

Accordingly, the government has waived any contention that the district court

properly applied the section 2D1.1(b)(2) adjustment based upon alleged threats of

violence directed at Lutz, Dasher, Riggs, or Lacey, or that any other evidence

supported an adjustment on this ground.  *See United States v. Romain*, 393 F.3d

63, 68 (1st Cir. 2004) ("An appellate court is free to deem abandoned claims or

defenses that the government (or any other litigant, for that matter) fails to

argue.").

### 3.    Adjustment for Endangering a Minor

The government renews the same argument it made at sentencing in support

a 2-level upward adjustment pursuant to USSG §2D1.1(b)(13)(D) for "substantial

risk of harm to the life of a minor," citing PSR ¶ 63 in support of its factual

assertions.  Government brief at 53–57.  However, Walker objected to the facts

outlined in PSR ¶ 63, *see* Addendum to PSR ¶ 6, the government offered no

evidence proving the factual allegations in PSR ¶ 63,  and the only evidence from

the trial that the government relied upon was that Walker had dried

23

methamphetamine in his residence, that chemicals had been found in the

residence, and that methamphetamine had been cooked in a shed and trailer

elsewhere on the property.  D576 at 54–56.  "When a defendant challenges one of

the factual bases of his sentence as set forth in the PSI, the government has the

burden of establishing the disputed fact by a preponderance of the evidence."

*United States v. Edmonds*, 348 F.3d 950, 953 (11th Cir. 2003) (internal quotation

and other marks omitted).  Accordingly, this Court should disregard all facts

alleged in PSR ¶ 63 that remained unproven despite Walker's objection.  *See* Fed.

R. Crim. P. 32(i)(3)(B).  The government proffered that persons "had to be

decontaminated," but offered no evidence to support that proffer.  D576 at 56–57.

Accordingly, this Court also should disregard that allegation.

The government relies on *United States v. Green*, 446 F. App'x 199, 200

(11th Cir. 2011), but in that case the government proved (as opposed to proffered)

that the defendant had operated his lab inside the residence, that, as a result,

noxious fumes had entered the residence, and that the defendant "had used screws

to seal the doors and windows … block[ing] escape routes."  The government

proved none of this in Walker's case.  In *United States v. Weeks*, 185 F. Appx 773,

777 (11th Cir. 2006), also cited by the government, the defendant did not object to

U.S. v. Walker, Appeal No. 12-16451

facts concerning his manufacturing operation, including that he had slept with an

18-month old child in a bed where methamphetamine powder was scattered.

Moreover, the government offered evidence that the defendant had dealt and used

drugs around his children. *Id*. Again, the government proved none of this in

Walker's case. The government relies on *United States v. Young*, 330 F. App'x

791, 200 (11th Cir. 2009), but in that case the defendant manufactured

methamphetamine in the residence where children had lived and the government

actually proved, as opposed to merely proffering as in Walker's case, that the

residence contained hazardous waste. Finally, in *United States v. Rodriguez*, 140

F. App'x 45 (11th Cir. 2005), the defendant conceded pertinent facts in his plea

agreement which upheld the adjustment and the government also offered

testimony to support the adjustment. Walker, however, objected to the factual

statement the government now relies on its brief, Addendum to PSR ¶ 6, and the

government offered no testimony to support this adjustment, D576 at 54–56.

The government does not address Walker's argument that the language of

USSG §2D1.1(b)(13)(D) indicates that this major 6-level adjustment only applies

to a defendant's manufacturing laboratory and that the adjustment also is limited

to those cases in which a manufacturing operation created a "*substantial*" risk of

harm.  Walker's brief at 62–65.  The government also does not address Walker's

arguments that the government's vague mention of the results of the execution of a

search warrant did not satisfy its burden to prove by the preponderance of the

evidence that the offense had created a substantial risk of harm to Walker's

daughter, in the absence of proof that the mere presence of specified items in the

family home posed a substantial risk of harm to Walker's daughter.  Walker's brief

at 63.  The government also makes no effort to distinguish the authorities cited by

Walker in his brief at 63–64, which illustrate the evidence typically found

sufficient for the adjustment to apply.  Again, this Court should conclude that the

government waived any challenge to these arguments.  *See United States v.*

*Romain*, 393 F.3d 63, 68 (1st Cir. 2004) ("An appellate court is free to deem

abandoned claims or defenses that the government (or any other litigant, for that

matter) fails to argue.")

### 4.    Adjustments for role in the offense and witness intimidation

The government still fails to establish that Walker had authority to make

any decisions other than whether he would, or would not, share with suppliers

methamphetamine that he manufactured.  Government brief at 58–60.  That

suppliers eagerly brought Walker pseudoephedrine and other items does not prove

that Walker recruited them.  There is no evidence that Walker participated in

planning or organizing activities of suppliers or that he had any control over

whether they would bring their supplies to him or to another manufacturer.

The government overstates Walker's teaching activity and understates

others' teaching activities.  Government brief at 45.  Apparently the government

relies upon Warner's testimony that Walker taught Mike Culp and Lucy Dasher,

D572 at 223, but (1) Warner did not explain why he believed that Walker had

taught Culp or Dasher; (2) Dasher testified that Warner had taught her (which

likely explains Warner's contradictory testimony); (3) Dasher testified that she had

provided Culp a recipe, D573 at 29–30;  and (4) Culp testified that he had learned

on his own by watching several persons, including Fernandez and Walker, D573 at

98–99.  Thus, the evidence showed that Plum taught three persons (Walker,

Fernandez, Goodman); Walker taught four persons (Bujno, Wilson, Fernandez,

Goodman); Fernandez taught two persons (Goodman, Warner); and Wilson taught

three persons (Fernandez, Padgett, Foster).  D571 at14–15, 25, 35, 46–47, 59, 61;

D572 at 69, 72–73, 81–84, 89–90, 150, 160, 163–69, 173–79, 187, 214, 225–26;

D573 at 25–32, 86, 98–99.  Proof that Walker taught one extra person does not

make him a leader or organizer, even if this Court concludes that all

27

U.S. v. Walker, Appeal No. 12-16451

manufacturing enterprises comprised a single conspiracy.

Inexplicably, the government assets that "[u]nlike these other participants, Walker plainly knew that all of these people were making methamphetamine[.]" Government brief at 46. However, the evidence proved that all participants in each operation necessarily knew who manufactured methamphetamine. Again, Walker shared methamphetamine that he manufactured with Bujno, Wilson, Fernandez, Foster, Warner, and Dasher. D571 at 15–18, 36, 55, 58–59; D572 at13–17, 64–67, 215–217; D573 at 13–20, 113. Fernandez shared methamphetamine that he manufactured with Goodman, Foster, Wilson, Kirkland, Riggs, and Warner. D572 at 155, 175–77, 183–84, 213–14; D573 at 119. Bujno shared methamphetamine that she manufactured with Wilson, Christine Collins, Riggs, and Ashley Murphy. D571 at 42; D572 at 86–87. Padgett shared methamphetamine that he manufactured with Wilson, Dasher, Boyer Perry, Tabatha Perry, "Joe," and "Johnny." D573 at 37–39. Wilson shared methamphetamine that she manufactured with Foster, Fernandez, and Stephen McMichael. D572 at 83, 87. Warner shared methamphetamine that he manufactured with Dasher. D573 at 47, 50. Goodman shared methamphetamine that he manufactured with Foster. D573 at 114. And, Riggs had her own

28

customer base. D572 at 184–85.

Bujno's singular assertion that she did not want to steal Walker's suppliers, which the government broadly contends shows Walker to be in control of the entire network of manufacturers, government brief at 46, provides an insufficient basis for Walker to be deemed a leader or organizer.  Walker was only one of many manufacturers.  After Fernandez taught Goodman to manufacture methamphetamine, Goodman no longer dealt with Walker, which upset Walker. D572 at 160–62.  Walker got upset when Dasher supplied other cookers, but, "[n]onetheless Dasher also provided pseudoephedrine pills to Anthony Padgett, Jennifer Wilson, Thomas Warner, and Michael Culp to use to manufacture methamphetamine."  PSR ¶ 47; D366 at 21.  After Dasher learned to manufacture her own methamphetamine, she no longer supplied Walker or obtained methamphetamine from him, which upset Walker.  D573 at 30–32,40–51. Walker also was upset when Culp began to manufacture his own methamphetamine.  D573 at 87–88.  This evidence proves the opposite of Walker being in control or having influence over the entire stable of methamphetamine manufacturers.

Finally, the government does not dispute that if this USSG §3B1.1

adjustment does not apply, the USSG §2D1.1(b)(14)(D) adjustment cannot apply.

Accordingly, this Court should vacate the adjustments that the district court

applied pursuant to both USSG §3B1.1 and USSG §2D1.1(b)(14)(D)

### 5.    Substantive reasonableness

In its argument in response to Walker's Issues IV.C and IV.D, the

government argues that Walker has failed to establish that the district court

imposed a substantively unreasonable sentence due to sentencing disparity.

Government brief at 44–48, 60–61.  In essence the government argues that

sentencing disparity, no matter how extreme, never can result in an unreasonable

sentence.  Government's brief at 44–48.  To the contrary, in *United States v. Irey*,

612 F.3de 1160, 1219 (11th Cir. 2010), this Court emphasized the importance of

this sentencing consideration.

The government also contends that Walker failed to show that his sentence

was unreasonably disparate because Walker is not similarly situated to his

codefendants.  Government brief at 45–48, 60–61.  This argument would have

merit if the disparity in this case was merely the result of procedural differences,

or differences in how the guidelines applied to individual defendants.  But, as

established in Walker's principal brief at 67–69,  in this case, despite that Walker

and many of his codefendants engaged in virtually identical conduct, the government took inconsistent factual positions that minimized Walker's coconspirators' sentences and maximized Walker's sentence, and the district court's made inconsistent factual determinations that led to even greater disparities. This is not the typical case in which these kinds of disparities can be justified.

Contrary to the government's contention at page 45 of its response, it failed to prove that any single manufacturer "was at the epicenter of the conspiracy." As set forth in Walker's principal brief, Statement of Facts at 4–9, many persons manufactured and many persons supplied each manufacturer. The authorities the government cites at pages 47–48 of its brief for the proposition that no sentencing disparity exists when differences in sentences are due to different roles are inapposite in this case because in Walker's case purported differences in drug quantity and role-in-the-offense are based upon the government's manipulation of facts. If this truly was a single conspiracy as the government contends, the quantity of methamphetamine involved would be the same for all conspirators. Nothing in the record supports the contention that only Walker, and no other, could reasonably foresee what amounts all manufacturers would create.

31

U.S. v. Walker, Appeal No. 12-16451

# CONCLUSION

Walker respectfully requests that this Court vacate the jury's verdict and the

judgment of the district court, and remand this case for a new trial.

Respectfully submitted,


s/Judy K. Hunt
Judy K. Hunt
Law Office of Judy K. Hunt, P.A.
Florida Bar No. 309842
4905 34th St. S., #142
St. Petersburg, Fl. 33711
727-422-4572
April 21, 2014                    jkhuntlaw@outlook.com

32

U.S. v. Walker, Appeal No. 12-16451

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this reply brief contains 6393 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4.

U.S. v. Walker, Appeal No. 12-16451

## CERTIFICATE OF SERVICE

I certify that on April 21, 2014, via CM/ECF, a copy of this document was

served on:

Linda Julin McNamara, counsel for the United States.


<u>s/Judy K. Hunt</u>

Judy K. Hunt
Law Office of Judy K. Hunt, P.A.
Florida Bar No. 309842
4905 34th St. S., #142
St. Petersburg, Fl. 33711
727-422-4572
jkhuntlaw@outlook.com